| | |
|---|---|
| Clara De Leon and Eric W. Mirsberger Jr., individually and on behalf of all others similarly situated, | Case No. 1:25-cv-00644 |
| | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| DraftKings Inc.; Crown NY Gaming Inc., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ....................................................................................2

LEGAL STANDARD..............................................................................................5

ARGUMENT ..........................................................................................................5

I.     The GBL And Fraud-Based Claims Should Be Dismissed (First Through Fourth And Sixth Through Tenth Causes Of Action)................................5

     A.     Plaintiffs Do Not Allege The Particular Advertisements That They Actually Viewed And Relied Upon, If Any..................................6

     B.     The Promotions Were Not Misleading Or Deceptive.................................7

          1.     The terms and conditions of the promotions fully disclosed all requirements..............................................8

          2.     Plaintiffs' interpretations are unreasonable. .................................12

     C.     Plaintiffs Have Not Alleged A Cognizable Injury Or Damages Caused By The Promotions. ....................................13

     D.     Plaintiffs Failed To Exhaust Their Remedies With The Gaming Commission. ..........................................14

II.     The Sixth Cause of Action Under The GBL Fails For Additional Reasons..........16

III.     The Fraud-Based Claims Fail For Additional Reasons (Seventh Through Tenth Causes Of Action). ......................................18

     A.     Plaintiffs Have Not Alleged Reasonable Reliance. ...................................18

     B.     Plaintiffs Have Not Adequately Alleged Intent To Defraud. ....................19

     C.     Plaintiffs' Ninth Cause of Action For Fraudulent Inducement Fails Because They Allege No Contract Between The Parties..........................19

IV.     The Fifth Cause Of Action For Negligence Should Be Dismissed. .....................20

     A.     This Court Should Not Impose The Novel Duties That Mirsberger Alleges. ..............................................20

     B.     Even If DraftKings Owed Mirsberger A Legal Duty, It Did Not Breach. ................................................24

     C.     The Complaint Does Not Adequately Allege Cognizable Injury Caused by Purported Negligence..............................24

V.     The Tenth Cause Of Action For Unjust Enrichment Should Be Dismissed As Duplicative Of The Other Claims..............................25

VI.     Plaintiffs May Not Assert Their Eleventh Cause Of Action For Declaratory Judgment. .......................................25

VII.     Plaintiffs Lack Standing To Seek Injunctive Relief. ...............................................26

CONCLUSION.........................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K&D Corp. v. Concierge Auctions, LLC*,
   2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...................................................17

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) .................................................7

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*,
   737 F.3d 166 (2d Cir. 2013).............................................................20

*Allen v. Caesars Ent. Corp.*,
   No. 23CV00989, 2023 WL 7181654 (E.D. Mo. Nov. 1, 2023) ...........................21

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)...............................................................5

*Antar v. Borgata Hotel Casino & Spa, LLC*,
   No. 22CV05785, 2024 WL 1672280 (D.N.J. Jan. 31, 2024).................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................5

*Bermudez v. Colgate-Palmolive Co.*,
   667 F. Supp. 3d 24 (S.D.N.Y. 2023).....................................................25

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)........................................................26, 27

*Blair v. NYNEX Corp.*,
   246 A.D.2d 336 (N.Y. App. Div. 1998) ...............................................14

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)...............................................................17

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020)................................................................8

*City Calibration Ctrs. Inc. v. Heath Consultants, Inc.*,
   727 F. Supp. 3d 332 (E.D.N.Y. 2024) ................................................19

*Cohen v. S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013)...............................................................19

iii

*Colangelo v. Champion Petfoods USA, Inc.*,
    No. 18CV1228, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ................................................25

*Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co.*,
    785 F. Supp. 411 (S.D.N.Y. 1992) ........................................................................................18

*Conboy v. AT & T Corp.*,
    241 F.3d 242 (2d Cir. 2001) ..................................................................................................17

*Connaughton v. Chipotle Mexican Grill, Inc.*,
    29 N.Y.3d 137 (2017) ............................................................................................................13

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ......................................................................................7

*DeCostanzo v. GlaxoSmithKline PLC*,
    643 F. Supp. 3d 340 (E.D.N.Y. 2022) ..................................................................................16

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    No. 12CV01058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), *aff'd*, 519 F. App'x 77
    (2d Cir. 2013) ......................................................................................................................8, 9

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir. 1992) *abrogated on other grounds as recognized in Gerosa v.*
    *Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003) ......................................................................18

*Donohue v. Copiague Union Free Sch. Dist.*,
    64 A.D.2d 29 (N.Y. App. Div. 1978), *aff'd*, 47 N.Y.2d 440 (1979) ....................................22

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022) ..................................................................................12

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................................................7, 8

*Geswaldo v. Gottlieb*,
    No. 24CV2543, 2025 WL 636091 (S.D.N.Y. Feb. 27, 2025) ..............................................24

*Greene v. Clean Rite Ctrs., LLC*,
    714 F. Supp. 3d 134 (E.D.N.Y. 2024) ..................................................................................25

*Guterman v. Costco Wholesale Corp.*,
    342 F. Supp. 3d 468 (S.D.N.Y. 2018), *aff'd*, 927 F.3d 67 (2d Cir. 2019) ............................16

*Hakimoglu v. Trump Taj Majal Assocs.*,
    70 F.3d 291 (3d Cir. 1995) ....................................................................................................21

*Hamilton v. Beretta U.S.A. Corp.*,
　96 N.Y.2d 222 (2001) ......................................................................................22

*Harris v. Pfizer Inc.*,
　586 F. Supp. 3d 231 (S.D.N.Y. 2022) .............................................................13

*Hesse v. Godiva Chocolatier, Inc.*,
　463 F. Supp. 3d 453 (S.D.N.Y. 2020) .............................................................26

*Howell v. I.N.S.*,
　72 F.3d 288 (2d Cir. 1995) ..............................................................................14

*In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*,
　995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd.*
　*P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016) ..........................18

*Jackson v. Boehringer Ingelheim Pharms., Inc.*,
　No. 06CV0969, 2007 WL 9718196 (W.D. Mo. Mar. 16, 2007) ............................21

*Kacocha v. Nestle Purina Petcare Co.*,
　No. 15CV5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) .............................17

*Katz 737 Corp. v. Cohen*,
　104 A.D.3d 144 (N.Y. App. Div. 2012) ........................................................14, 15

*L–7 Designs, Inc. v. Old Navy, LLC*,
　647 F.3d 419 (2d Cir. 2011) ..............................................................................10

*Lama Holding Co. v. Smith Barney Inc.*,
　88 N.Y.2d 413 (1996) .......................................................................................13

*Leder v. Am. Traffic Sols., Inc.*,
　81 F. Supp. 3d 211 (E.D.N.Y. 2015), *aff'd*, 630 F. App'x 61 (2d Cir. 2015).........................26

*Logan v. Ameristar Casino Council Bluffs, Inc.*,
　185 F. Supp. 2d 1021 (S.D. Iowa 2002) ............................................................21

*Ludlow Essex Partners LLC v. Wells Fargo Bank, N.A.*,
　No. 17CV2042, 2017 WL 2963488 (S.D.N.Y. July 11, 2017).................................20

*Mason v. Mach. Zone, Inc.*,
　140 F. Supp. 3d 457 (D. Md. 2015), *aff'd*, 851 F.3d 315 (4th Cir. 2017) ..............................22

*McCarthy v. Olin Corp.*,
　119 F.3d 148 (2d Cir. 1997) ..............................................................................22

*Merrill v. Trump Ind., Inc.*,
　320 F.3d 729 (7th Cir. 2003) .............................................................................20

*Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*,
No. 23CV6237, 2024 WL 2978306 (S.D.N.Y. June 12, 2024), *aff'd*, No. 24-1880,
2025 WL 763392 (2d Cir. Mar. 11, 2025) ...............................................................................14

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) ....................................................................................25

*NOLA 180 v. Harrah's Operating Co.*,
94 So. 3d 886 (La. Ct. App. 2012) ..........................................................................................21

*Orlander v. Staples Inc.*,
802 F.3d 289 (2d Cir. 2015) ...........................................................................................13, 14

*Peppiatt v Aetna Life Ins. Co.*,
No. 17CV02444, 2017 WL 6034641 (E.D.N.Y. Dec. 4, 2017) ...............................................14

*Pulka v. Edelman*,
40 N.Y.2d 781 (1976) ..............................................................................................................22

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) .....................................................................................17

*Ristic v. Mach. Zone, Inc.*,
No. 15CV8996, 2016 WL 4987943 (N.D. Ill. Sept. 19, 2016) ................................................21

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
192 F. Supp. 3d 348 (S.D.N.Y. 2016) ......................................................................................6

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012) ......................................................................................8

*Sessions Payroll Mgmt., Inc. v. Noble Constr. Co.*,
84 Cal. App. 4th 671 (2000) ....................................................................................................26

*Sherman v. Harrah's New Orleans Casino*,
No. 06CV2379, 2008 WL 11509255 (E.D. La. Feb. 12, 2008) ...............................................21

*Silvester v. Selene Fin., LP*,
No. 18CV02425, 2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) ........................................8, 10

*SM Kids, LLC v. Google LLC*,
963 F.3d 206 (2d Cir. 2020) ......................................................................................................5

*Smith v. Apple, Inc.*,
583 F. Supp. 3d 554 (S.D.N.Y. 2022) .......................................................................................6

*Steinberg v. Sea Gate Ass'n*,
118 A.D.2d 558 (N.Y. App. Div. 1986) ..................................................................................14

*Stevens v. MTR Gaming Grp., Inc.*,
   788 S.E.2d 59 (W. Va. 2016) ............................................................................21

*Strauss v. Belle Realty Co.*,
   65 N.Y.2d 399 (1985) ......................................................................................22

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005)..............................................................................26

*Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*,
   169 A.D.3d 1510 (N.Y. App. Div. 2019) ............................................................13

*Taveras v. Resorts Int'l Hotel, Inc.*,
   No. 07CV4555, 2008 WL 4372791 (D.N.J. Sept. 19, 2008)..................................21

*Travelex Currency Servs., Inc. v. Puente Enters., Inc.*,
   449 F. Supp. 3d 385 (S.D.N.Y. 2020)................................................................18

*Warren v. Whole Foods Mkt. Grp., Inc.*,
   574 F. Supp. 3d 102 (E.D.N.Y. 2021) ...............................................................25

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ..........................................................................6

*Wen v. New York City Reg'l Ctr., LLC*,
   695 F. Supp. 3d 517 (S.D.N.Y. 2023), *aff'd*, No. 23-7506, 2024 WL 4180521
   (2d Cir. Sept. 13, 2024)......................................................................................5

*West v. Sambazon, Inc.*,
   750 F. Supp. 3d 356 (S.D.N.Y. 2024)..............................................................8, 13

*Wheeler v. Topps Co.*,
   652 F. Supp. 3d 426 (S.D.N.Y. 2023)................................................................19

*Wiggins v. Unilver United States, Inc.*,
   684 F. Supp. 3d 127 (S.D.N.Y. 2023)..................................................................5

*Wright v. Publishers Clearing House, Inc.*,
   372 F. Supp. 3d 61 (E.D.N.Y. 2019) ................................................................6, 7

*Yoomi Babytech, Inc. v. Anvyl, Inc.*,
   No. 20CV7933, 2021 WL 4332258 (S.D.N.Y. Sept. 22, 2021) ............................19

**Docketed Cases**

*Beyer v. DraftKings Inc.*, No. 1:25-cv-00003-DJH (W.D. Ky.).....................................7

*Beyer v. DraftKings Inc.*, No. 1:25-cv-01336 (N.D. Ill.).............................................7

*Youngs v. DraftKings Inc.*, No. 2:25-cv-00179-SRC (D.N.J.) ........................................................7

**Statutes**

28 U.S.C. § 2201 ..............................................................................................................5

NY Gen. Bus. Law
  § 349................................................................................................... *passim*
  § 350................................................................................................... *passim*

Racing, Pari-Mutuel Wagering and Breeding Law, Ch. 47-A, Art. 13, Tit. 7
  § 104.............................................................................................................23
  § 104(6).........................................................................................................16
  § 111(2)(b)....................................................................................................23
  § 1363...........................................................................................................17
  § 1367(5).......................................................................................................15
  § 1367-a ...............................................................................................15, 16, 23

**Other Authorities**

N.Y. Comp. Codes R. & Regs. tit. 9
  § 5325.6..................................................................................................15, 16
  § 5329.37................................................................................................15, 16
  §§ 5330.1–5330.45.........................................................................................23
  § 5330.23(b)(4).......................................................................................16, 23
  § 5330.34................................................................................................15, 16
  § 5330.38................................................................................................15, 16
  § 5330.45.......................................................................................................15

Rule 9(b) .............................................................................................1, 6, 18

Rule 12(b) .............................................................................................5, 10

## INTRODUCTION

DraftKings Inc. operates an online sportsbook platform ("DK Sportsbook"). Plaintiffs Clara De Leon ("De Leon") and Eric W. Mirsberger Jr. ("Mirsberger") purport to bring a class action concerning: (1) two DraftKings promotions by which customers can earn credits for use on DK Sportsbook, one offering a deposit bonus to new customers ("New Customer Promotion") and one offering customers who opt in and place a losing bet an additional "Bonus Bet" in the same amount as the losing bet ("No Sweat Promotion") (together with the New Customer Promotion, the "Promotions"); and (2) DraftKings' "VIP Hosts," who offer benefits to customers as part of a loyalty program. The Complaint should be dismissed with prejudice because it suffers from several fatal deficiencies.

Plaintiffs allege that the Promotions are misleading and assert various claims under New York General Business Law ("GBL") sections 349 and 350, and for intentional misrepresentation, fraudulent inducement, and unjust enrichment. These claims fail because, among other reasons, the Promotions are not deceptive. To the contrary, the terms and conditions of each of the Promotions disclosed *all* of the information that Plaintiffs contend was omitted.

The claims regarding the Promotions fail for multiple other reasons, including because Plaintiffs: (i) fail to meet the Rule 9(b) standard by, among other things, not identifying which advertisements for the Promotions, if any, they actually viewed and relied upon; (ii) have not alleged they suffered any loss by failing to receive promotional rewards; (iii) did not exhaust their administrative remedies with the state Gaming Commission before suing; and (iv) have not alleged facts to support the elements of reliance or intent to defraud.

In addition, Mirsberger asserts a negligence claim against DraftKings on the theory that his VIP Hosts allegedly violated a legal duty to prevent him from betting beyond his means. That

claim fails because: (i) there is no such legally cognizable duty; (ii) Mirsberger's own allegations do not show a breach even if there were such a duty; and (iii) Mirsberger fails to allege a cognizable injury.

Plaintiffs' final claim, for a declaration that DraftKings breached agreements with Apple Inc. and Google LLC, fails because Plaintiffs lack standing to sue under those contracts.

Plaintiffs also lack standing to seek injunctive relief. Whatever Plaintiffs allege they did not understand before, it is undisputed that they now fully understand the Promotions and cannot show an imminent risk of future harm.

Because amendment could not cure these deficiencies, the Court should dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS[1]

The Complaint concerns two DraftKings[2] Promotions by which users could earn site credits (called DK Dollars) to use on DK Sportsbook:

(1) the New Customer Promotion, which offered up to $1,000 in DK Dollars to new customers who deposited funds and placed wagers of certain types and amounts within 90 days of signing up for a DraftKings account (Compl. ¶ 180); and

(2) the No Sweat Promotion, which offered a "Bonus Bet" in DK Dollars in the amount of a customer's initial wager to a customer who opted into the promotion, wagered, and lost that wager (*id.* ¶ 136).

---

[1] As required, and for purposes of this Motion only, DraftKings relies on facts taken from the Complaint without admitting their truth.

[2] Defendant DraftKings Inc. and Defendant Crown NY Gaming Inc. are referred to as "DraftKings" for purposes of this Motion. Crown NY Gaming Inc. is a subsidiary of DraftKings. Compl. ¶ 43.

De Leon alleges that she "created an account on DraftKings while located in Illinois in 2018." *Id.* ¶ 35. De Leon does not allege that she entered the New Customer Promotion.

De Leon alleges that, in January 2023, she made her first deposit and entered a No Sweat Promotion "that she saw advertised in digital media." Compl. ¶ 36. She does not allege the content of the No Sweat Promotion that she allegedly saw.[3] She alleges that she "was surprised to discover that she did not get her original stake back when she lost" her bet "and instead received an expiring 'Bonus Bet.'" *Id.* She (and Mirsberger) allege that the No Sweat Promotion was deceptive because the Bonus Bet is not awarded in cash and expires after a certain period, and because a customer cannot "cash out a refund if they lose" their first bet "but instead must place another bet." *Id.* ¶¶ 134, 160–61.

Mirsberger alleges that he created a DraftKings account in October 2023. *Id.* ¶ 38. He alleges that he "saw advertisements" for the New Customer Promotion "shortly before he funded his accounts," but he does not allege the text of those advertisements or that it was those purported advertisements that caused him to create his account. *Id.* ¶ 175. Mirsberger alleges that the New Customer Promotion is misleading because, to receive the maximum bonus, a customer had to: (1) "deposit $5,000"; (2) "bet $25,000 within 90 days"; and (3) place those bets "on wagers with odds of '-300 or longer.'" *Id.* ¶ 180(a)-(c).

Mirsberger also alleges that he entered "numerous" No Sweat Promotions around the time that he created his account. *Id.* ¶¶ 40–41. He claims that he was surprised that "he was not credited back his original stake but only an expiring 'Bonus Bet'" after losing his initial bet. *Id.* ¶ 40. He alleges that he nevertheless continued to enter No Sweat Promotions. *Id.* ¶ 41.

---

[3] The Complaint includes several screenshots of advertisements for No Sweat and New Customer Promotions but does not allege that either Plaintiff saw the advertisements depicted.

At some point, Mirsberger was allegedly contacted by DraftKings employees who introduced themselves as Mirsberger's "VIP Host[s]." *Id.* ¶¶ 210–11. According to Mirsberger, his VIP Hosts "called and texted Plaintiff Mirsberger offering him promotions," including No Sweat Promotions. *Id.* ¶¶ 208, 211. Mirsberger alleges that his VIP Host offered him "500" in November 2024, two months after Mirsberger texted that he had lost his "last $1,750." *Id.* ¶¶ 228, 231 (Fig. 16). Mirsberger alleges that, at some point after that, he told his VIP Host that he "had 'lost [his] final $3,400,'" at which time his account was "flagged and forwarded to DraftKings' 'Player Protection Team' for review," and Mirsberger was "cut off." *Id.* ¶¶ 232, 234. DraftKings also "connect[ed] [Mirsberger] with resources" to assist with "gambling addiction." *Id.* ¶ 234. As of some unspecified date, Mirsberger allegedly had sustained losses of $45,000 on DK Sportsbook. *Id.* ¶ 220. Mirsberger does not allege his total winnings or losses as of the date he was "cut off."

Mirsberger claims these facts show that DraftKings breached a duty to him and "foreseeable victims of gambling addictions," which, according to Mirsberger, includes duties "to help users [DraftKings] has reason to know are gambling beyond their means" and "discover through reasonable diligence when its users are gambling beyond their means as a result of a gambling addiction." *Id.* ¶¶ 298–302.

Based on these allegations, Plaintiffs bring causes of action for (1) Violation of New York GBL § 349 (challenging the No Sweat Promotion); (2) Violation of GBL § 350 (challenging the No Sweat Promotion); (3) Violation of GBL § 349 (challenging the New Customer Promotion); (4) Violation of GBL § 350 (challenging the New Customer Promotion); (5) Negligence (asserted on behalf of a purported "DraftKings VIP Host Targeted Class"); (6) Violation of GBL §§ 349 & 350 (asserted on behalf of a purported "DraftKings VIP Host Targeted Class"); (7) Intentional Misrepresentation (challenging the No Sweat Promotion); (8) Intentional Misrepresentation

(challenging the New Customer Promotion); (9) Fraudulent Inducement; (10) Unjust Enrichment; and (11) Declaratory Judgment, 28 U.S.C. § 2201.

## **LEGAL STANDARD**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A court must accept factual allegations as true for purposes of a motion to dismiss, but conclusory allegations are not credited. *Id.* When an allegation in a complaint is squarely contradicted by a properly considered extrinsic document, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011); *see also Wen v. New York City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 533–34 (S.D.N.Y. 2023) (granting motion to dismiss when the terms of an agreement incorporated by reference contradicted allegations).

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). "A plaintiff must demonstrate standing separately for each form of relief sought, and a plaintiff seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Wiggins v. Unilver United States, Inc.*, 684 F. Supp. 3d 127, 139 (S.D.N.Y. 2023) (internal citations and quotation marks omitted).

## **ARGUMENT**

I. **The GBL And Fraud-Based Claims Should Be Dismissed (First Through Fourth And Sixth Through Tenth Causes Of Action).**

The First, Second, Third, Fourth, and Sixth Causes of Action challenge the New Customer Promotion and No Sweat Promotion under the GBL; the Seventh, Eighth, Ninth, and Tenth Causes of Action challenge those Promotions under various theories sounding in fraud. These claims

suffer from a host of pleading and legal defects, each of which is independently fatal.

### A. Plaintiffs Do Not Allege The Particular Advertisements That They Actually Viewed And Relied Upon, If Any.

To state a false-advertising or fraud-based claim, Plaintiffs are required to "specify the content of the representations, advertisements, and promotions" that they saw, explain why they are false, and plead that they relied on them. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). Although the Complaint includes several screenshots of No Sweat Promotions (Compl. ¶ 143 (Fig. 5), ¶¶ 147–49, 156 (Figs. 8–10)) and New Customer Promotions (*id.* ¶ 174 (Figs. 11–13)), it contains no allegations that either of the Plaintiffs saw or relied upon the Promotions depicted in those screenshots.[4] Indeed, the Complaint fails to identify any advertisement that was actually seen by either of the Plaintiffs or that caused either of the Plaintiffs to take any action.

Those omissions are fatal to Plaintiffs' fraud and GBL claims challenging the Promotions. Rule 9(b) requires the fraud-based claims be pled with particularity.[5] A complaint "fails to allege fraud with the requisite particularity" if it "does not specify which statements the plaintiffs viewed or when." *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022). Likewise, GBL claims are subject to dismissal where, as here, a complaint "fails to identify the specific advertisements

---

[4] The Complaint also includes two screenshots of advertisements for promotions titled "Risk-Free Bet." *See* Compl. ¶ 130 (Fig. 3), ¶ 143 (Fig. 7). These screenshots are from 2022 (*id.*), before Plaintiffs deposited funds in 2023. *Id.* ¶¶ 36, 38. Plaintiffs allege that DraftKings stopped using the term "Risk-Free" in late 2022. *Id.* ¶ 156. Thus, according to Plaintiffs' allegations, Plaintiffs did not enter promotions containing the words "Risk-Free," and they lack standing to challenge "Risk-Free" promotions.

[5] Rule 9(b) applies to the unjust enrichment claim because it is premised on claims of fraudulent conduct. *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016); Compl. ¶¶ 359–71.

seen by each plaintiff." *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (dismissing section 349 claim that "contain[ed] only general allegations about disclosures to all Plaintiffs and does not contain any allegations about the specific disclosures [the individual plaintiff] did or did not receive"). To plead a GBL claim, each plaintiff must "describe[] in detail the allegedly misleading and deceptive statements . . . upon which he relied in purchasing the product," which Plaintiffs have failed to do because they have identified no statement that they relied upon. *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014). This Court "cannot determine whether the advertisements are materially misleading without knowing exactly what representations each plaintiff saw." *Wright*, 372 F. Supp. 3d at 67.

## B. The Promotions Were Not Misleading Or Deceptive.

Even if Plaintiffs had alleged that they viewed and relied upon the advertisements copied into the Complaint (which they do not),[6] the GBL and fraud-based claims still fail because those advertisements are not misleading in any respect.

Proof of a misrepresentation or misleading omission is required to state claims under GBL sections 349 and 350 and to state claims sounding in fraud. An act is materially misleading under the GBL if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.*

---

[6] The Complaint apparently was not drafted based on any statement that De Leon or Mirsberger viewed. Their counsel filed four actions in different forums on behalf of different named plaintiffs copying *the exact same advertisements* into each complaint. *Youngs v. DraftKings Inc.*, No. 2:25-cv-00179-SRC (D.N.J. Jan. 7, 2025); *Beyer v. DraftKings Inc.*, No. 1:25-cv-00003-DJH (W.D. Ky. Jan. 8, 2025); *Beyer v. DraftKings Inc.*, No. 1:25-cv-01336 (N.D. Ill. Feb. 6, 2025).

Here, there was no deception. The terms and conditions for each promotion fully disclosed the requirements. In any event, taking the phrases "No Sweat" and "up to $1,000" out of context and not in conjunction with the terms, reasonable consumers would not have interpreted those phrases as Plaintiffs claim to have interpreted them. Compl. ¶ 82.[7]

### 1. The terms and conditions of the promotions fully disclosed all requirements.

The terms and conditions of each of the Promotions fully explained the requirements for obtaining site credits and how the Promotions operate. The Court must consider "the entire context," including the full terms and conditions, to determine "what a reasonable consumer would believe." *West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 368–69 (S.D.N.Y. 2024). And "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (citations and internal quotation marks omitted); *Fink*, 714 F.3d at 742 ("the presence of a disclaimer or similar clarifying language may defeat a claim of deception"); *Silvester v. Selene Fin., LP*, No. 18CV02425, 2019 WL 1316475, at *9 (S.D.N.Y. Mar. 21, 2019) (holding that courts are "reluctant to find a practice is materially misleading . . . if Defendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm to the Plaintiff"); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012) (dismissing section 349 claim where defendant's alleged deceptive practice was fully disclosed in the terms of service).

In *Derbaremdiker v. Applebee's International, Inc.*, the court applied these principles in an analogous context to dismiss a claim under sections 349 and 350. No. 12CV01058, 2012 WL

---

[7] Plaintiffs' allegations about "risk-free" are irrelevant because, as explained *supra* note 4, Plaintiffs did not enter a promotion in response to advertisements containing that language.

4482057, at *1 (E.D.N.Y. Sept. 26, 2012). The plaintiff in *Derbaremdiker* participated in a sweepstakes by completing a guest survey regarding his experience at an Applebee's restaurant. *Id.* The plaintiff brought claims under sections 349 and 350, alleging he believed he was competing only against other Applebee's customers and for multiple prizes, when he was actually competing against the patrons of thirty businesses and for only two prizes. *See id.* at *2. The receipt, which contained the offer, stated "[s]ee Website for rules/details," and the website contained a hyperlink to the official rules. *Id.* at *6. The court determined that "[b]ecause the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled." *Id.* Accordingly, the court ruled that the plaintiff did not show misleading conduct under the GBL. *Id.*

The same is true here:

*New Customer Promotion*. Mirsberger[8] posits that the New Customer Promotion is misleading because, to receive the maximum bonus of $1,000, a customer had to (1) "deposit $5,000 up front"; (2) "bet $25,000 within 90 days"; and (3) place those bets "on wagers with odds of '-300 or longer.'" Compl. ¶ 180(a)-(c). As he admits, however, the promotion is subject to terms that "explain[]" precisely these three requirements and, in his words, "reveal[] the truth" about the promotion. *Id.* ¶¶ 180, 198; Declaration of Gary Wimbridge ISO Defendants' Motion to Dismiss ("Wimbridge Decl.") ¶ 5 & Ex. 1 (terms presented to Mirsberger).[9]

---

[8] The claims challenging the New Customer Promotion are brought only by Mirsberger. *See* Compl. ¶¶ 274, 290.

[9] Though not alleged in the Complaint, this Court may consider the full terms and conditions. A "[p]laintiff['s] failure to include matters of which as pleader[] [he] had notice and which were integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means

First, Mirsberger alleges the New Customer Promotion was misleading because a new customer had to "deposit $5,000 up front" to qualify for $1,000 in site credits. Compl. ¶ 180(a). The terms disclose that exact requirement: "the customer must deposit $5,000 to be eligible to receive the maximum bonus amount of $1,000 in DK Dollars." *See* Wimbridge Decl. ¶¶ 4–5 & Ex. 1 at 7. The terms explain that the amount of the bonus depends on the amount of the initial deposit, stating that a customer's deposit of money is what "dictates the amount of DK Dollars available to be earned," and that the exact "[b]onus reward is equal to 20% of Qualifying Deposit amount." *Id.* In addition to being described in the full set of terms, this requirement was conspicuously displayed at the top of the deposit page, above the field in which a new customer could select an amount to deposit. *See id.* Ex. 1 at 1 ("[Y]ou will receive a **20% deposit bonus up to $1,000 in DK Dollars!** Bonus funds are earned as you play.").

Second, Mirsberger alleges that the New Customer Promotion is misleading because he was unaware that he "would have to bet $25,000 within 90 days" to earn the maximum bonus. Compl. ¶ 180(b). Again, the terms repeatedly disclose that playthrough requirement as well:

> DK Dollars will be awarded to the customer according to the following playthrough requirement: for every $25 played on any DraftKings product, the customer will receive $1 in bonus funds released into their player account (applicable only on paid DFS contests, Sportsbook bets (-300 odds or longer), casino products, or any combination thereof) (e.g., a $5,000 deposit *requires a customer to play through a cumulative total of $25,000 to receive the maximum bonus amount of $1,000 DK Dollars*). The play-through requirement must be *met within ninety (90) days* from the date of the customer's Qualifying Deposit to receive the maximum bonus award (the 'Play Through Period').

---

of forestalling the district court's decision on [a 12(b)(6)] motion." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). "When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, or matters of which judicial notice may be taken." *Silvester*, 2019 WL 1316475, at *1 n.1. The Complaint contains many references to the terms of the Promotions, and Plaintiffs admit they exist. Compl. ¶¶ 4, 82, 89, 106, 142, 149.

Wimbridge Decl. ¶¶ 4–5 & Ex. 1 at 7 (emphasis added). The fact that DK Dollars are only "earned as you play" was also displayed prominently above the deposit section on customers' screens. *Id.* ¶ 5, Ex. 1 at 1.

Finally, Mirsberger alleges that the New Customer Promotion is misleading because a new customer must place bets "with odds of '-300 or longer.'" Compl. ¶ 180(c). Again, that requirement is disclosed in the portion of the terms copied above. *See* Wimbridge Decl. ¶¶ 4–5 & Ex. 1 (requiring that bets used toward the playthrough requirement be "-300 odds or longer" if placed on Sportsbook).

*No Sweat Promotion.* Plaintiffs allege that DraftKings omitted the following facts about the No Sweat Promotion: (1) the Bonus Bet is not awarded "as cash" (Compl. ¶ 161); (2) the Bonus Bet expires after a certain period (*id.* ¶ 137); (3) a customer cannot "cash out a refund if they lose" their first bet "but instead must place another bet . . . that they receive" (*id.* ¶ 134); and (4) "when a customer wins a bet with the 'Bonus Bet', they do not receive the stake back" but instead receive their "winnings, minus 9% vig" (*id.* ¶ 138). In fact, as Plaintiffs admit, all of these requirements were disclosed in the advertisements and in the official terms. *Id.* ¶¶ 142, 198 (terms "reveal[] the truth" about the "promotions").

Plaintiffs include a March 2024 advertisement for the No Sweat Promotion that shows the terms Plaintiffs claim were omitted. *Id.* ¶ 143 (Fig. 5). The advertisement prominently states the customer will "[g]et a bonus bet"—not cash—"back in the amount of your original wager if your first bet doesn't hit." *Id.* The text at the bottom of Figure 5 reiterates that the "[r]eward" is "issued as 1 Bonus Bet." *Id.* That text also states that Bonus Bets will expire: "Bonus bets expire 7 days (168 hours) after being awarded." *Id.* It further states that "Bonus bets must be wagered 1x before any resulting cash winnings can be withdrawn and stake is not included in winnings," clearly

informing customers that they must place the Bonus Bet to withdraw cash and that they will not receive the stake back. *Id.* In sum, the precise requirements that Plaintiffs complain of were all disclosed on the face of the advertisement itself.

Moreover, the full terms of a No Sweat Promotion that are copied into the Complaint at Figure 9 repeat these requirements and further belie Plaintiffs' assertion that the promotion was misleading. Compl. ¶ 149 (Fig. 9) ("Bonus Bets are . . . non-withdrawable, and have no cash value. Bonus Bets are valid for seven (7) days (168 hours) from the time they are credited to customers' accounts."; "Payouts from Bonus Bet wagers will be transferred to the customer's cash balance and do not include the Bonus Bet stake.").

### 2.     Plaintiffs' interpretations are unreasonable.

The Promotions are not deceptive for the independent reason that Plaintiffs fail to "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled" into believing what Plaintiffs claim they believed. *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). Plaintiffs' interpretations of the phrases "No Sweat Bet" and "up to $1,000" are not reasonable.

Plaintiffs allege that they understood advertisements for a "no sweat bet" to represent that a consumer could "simply cash out a refund if they lose" and that the consumer would "receive the stake back." Compl. ¶¶ 134, 138, 143 (Fig. 5). They allege that advertising a "deposit bonus up to $1,000" in connection with the New Customer Promotion purportedly represented "that their deposit would be 'matched' in full up to $1,000" and that the bonus funds "could be withdrawn."[10] Compl. ¶¶ 174 (Figs. 11–13), 178, 184. These interpretations directly contradict the actual terms

---

[10] The screenshotted advertisements significantly predate any alleged activity on either Plaintiffs' accounts (and over a year prior to Mirsberger creating his account).

of each promotion that were disclosed to Plaintiffs. *See supra* Part I.B.1. But even taken out of that context, nothing about the phrase "no sweat" promises specifically a cash refund of the initial stake, as opposed to the Bonus Bet that the promotions—and the screenshots Plaintiffs themselves include in their Complaint—in fact offer. Likewise, Plaintiffs' belief that the phrase "get a deposit bonus up to $1,000" meant that "their deposit would be 'matched' in full," and that the bonus could be "withdrawn" as cash, is similarly unreasonable. Nothing in the advertisements in Figures 11, 12, or 13 refers to a 1-for-1 match or a withdrawable bonus. "A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression." *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243–44 (S.D.N.Y. 2022) (dismissing false-advertising claim on that ground); *West*, 750 F. Supp. 3d at 372 (dismissing false-advertising claim where plaintiff "merely thought [the allegedly deceptive statement] meant more than either Defendant ever said that it means"). Because reasonable consumers would not have misread the advertisements as Plaintiffs have, their claims fail as a matter of law.

### C. Plaintiffs Have Not Alleged A Cognizable Injury Or Damages Caused By The Promotions.

To plead injury under sections 349 and 350, a plaintiff must "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). To adequately allege fraud injury, a plaintiff must allege "actual pecuniary loss sustained as the direct result of the wrong." *Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*, 169 A.D.3d 1510, 1511 (N.Y. App. Div. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)). A pleading "is fatally deficient" where it does "not assert compensable damages resulting from defendants' alleged fraud." *Id.* (quoting *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 143 (2017)).

Plaintiffs have not adequately alleged a pecuniary loss sustained as the direct result of any specific wrongdoing. There is no allegation in the Complaint that they "purchased" anything from DraftKings, let alone failed to receive "full value" of a purchase. *See Orlander*, 802 F.3d at 302. As to the New Customer Promotion, Plaintiffs allege that their injury is "monetary losses when they failed to receive a cash deposit match." Compl. ¶ 284. But failure to receive a reward from DraftKings is not a pecuniary loss, let alone a pecuniary loss that directly resulted from DraftKings' wrongdoing. Regarding the No Sweat Promotion, Plaintiffs allege that they incurred "monetary losses when they failed to receive cash refunds for bets they placed and lost" (*id*. ¶ 259). But such cash refund is not a pecuniary loss because DraftKings never promised a cash refund.

### D.  Plaintiffs Failed To Exhaust Their Remedies With The Gaming Commission.

Plaintiffs' GBL and fraud-based claims are subject to dismissal for the additional reason that Plaintiffs were required to, but did not, plead that they have exhausted their administrative remedies. *See Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 23CV6237, 2024 WL 2978306, at *3 (S.D.N.Y. June 12, 2024) ("[C]ourts have . . . dismissed claims where plaintiffs fail to plead, or plead only in conclusory fashion, that they have exhausted their administrative remedies."); *see also Peppiatt v Aetna Life Ins. Co.*, No. 17CV02444, 2017 WL 6034641, at *5 (E.D.N.Y. Dec. 4, 2017). "The doctrine of exhaustion of administrative remedies requires that one first exhaust all available administrative channels before looking to the courts for relief." *Steinberg v. Sea Gate Ass'n*, 118 A.D.2d 558, 558 (N.Y. App. Div. 1986); *Blair v. NYNEX Corp.*, 246 A.D.2d 336, 336–37 (N.Y. App. Div. 1998). The requirement to exhaust "may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995). If the "intent of the legislature" that "matters be decided by [the agency] in the first instance can be reasonably inferred from" a "statutory scheme," exhaustion is required,

even if the statute does not "expressly say that [the agency] alone is to decide [the] issues." *Katz 737 Corp. v. Cohen*, 104 A.D.3d 144, 149 (N.Y. App. Div. 2012) (concluding that exhaustion was required where statute provided that the agency would "hear and resolve" the matters raised in the complaint).

Plaintiffs were required to first bring their claims to the New York Gaming Commission. The New York legislature's intent that promotion-related and responsible-gaming matters are to be addressed by the Gaming Commission in the first instance can be "reasonably inferred" from New York's detailed regulatory scheme governing those matters. *See Katz 737 Corp.*, 104 A.D.3d at 149. The New York gaming statute, the Racing, Pari-Mutuel Wagering and Breeding Law, establishes an administrative scheme applicable to activities by mobile sports wagering operators like DraftKings. Racing, Pari-Mutuel Wagering and Breeding Law, Ch. 47-A, Art. 13, Tit. 7 ("RPMWBL"), § 1367-a. Substantively, the administrative scheme includes numerous requirements on mobile sports betting operators related to advertising and responsible-gaming matters. N.Y. Comp. Codes R. & Regs. tit. 9, §§ 5325.6, 5329.37, 5330.38, 5330.34, & 5330.45. As part of this scheme, operators must submit proposed promotions to the Gaming Commission *for approval in advance*. *Id.* § 5330.38(a), (a)(2) (mobile sports wagering promotions must be "submit[ted] to the commission . . . for approval a minimum of 15 days prior" and shall not "contain misleading information").[11]

Procedurally, the RPMWBL provides channels for customers to seek recourse against operators for precisely the type of alleged violations at issue here. It authorizes "sports bettors" to "file a complaint alleging a violation of the provisions of [the statute] with the commission." RPMWBL § 1367(5). The Gaming Commission's regulations likewise provide that "a

---

[11] The Gaming Commission has approved both of the Promotions.

complainant who believes the complaint has not been resolved satisfactorily [by the operator] may file a complaint with the commission." N.Y. Comp. Codes R. & Regs. tit. 9, § 5330.23(b)(4). The agency has the power to conduct "hearings pertaining to violations of" the Act. RPMWBL § 104(6). It is authorized to "take action against a licensee in the event the commission concludes that such licensee violated a law, including regulation." N.Y. Comp. Codes R. & Regs. tit. 9, § 5330.23(b)(4).

Plaintiffs' First, Second, and Sixth Causes of Action under GBL sections 349 and 350 expressly allege that DraftKings violated provisions of the RPMWBL and its implementing regulations related to advertising. Compl. ¶ 253 (citing N.Y. Comp. Codes R. & Regs. tit. 9, §§ 5329.37, 5325.6), ¶ 268 (citing N.Y. Comp. Codes R. & Regs. tit. 9, § 5329.37), ¶¶ 317, 319–20. Plaintiffs' Third and Fourth Causes of Action, also under the GBL, as well as their Seventh through Tenth Causes of Action, allege that DraftKings' promotional advertising is misleading, bringing the claims within the scope of the regulations' prohibitions on "misleading information." N.Y. Comp. Codes R. & Regs. tit. 9, §§ 5330.38, 5329.37(b); *see DeCostanzo v. GlaxoSmithKline PLC*, 643 F. Supp. 3d 340, 348 (E.D.N.Y. 2022) (GBL claims were subject to exhaustion requirement that was imposed under different statute); *Guterman v. Costco Wholesale Corp.*, 342 F. Supp. 3d 468, 480–81 (S.D.N.Y. 2018) (same). The Fifth Cause of Action concerns responsible gaming, which is also extensively addressed by the RPMWBL. RPMWBL § 1367-a(4)(a)(x)-(xv); N.Y. Comp. Codes R. & Regs. tit. 9, § 5330.34. Plaintiffs could have, but did not, seek redress with the Gaming Commission for these alleged violations, and the claims are therefore barred.

## II.     The Sixth Cause of Action Under The GBL Fails For Additional Reasons.

Mirsberger's Sixth Cause of Action[12] is a purported GBL claim based on alleged violations

---

[12] Only Mirsberger asserts this claim. Compl. ¶ 315.

of certain technical requirements under the RPMWBL and its implementing regulations. Compl. ¶¶ 314–22. Specifically, Mirsberger claims that DraftKings violated the RPMWBL by allegedly not providing a problem-gaming contact number in text messages from his VIP Host, not including an option to stop receiving messages, and using unspecified "keywords" that "attract persons . . . who are or may be problem gamers" in text messages with Mirsberger. *Id.* ¶¶ 319–20. But a plaintiff "cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under GBL § 349," which is precisely what the Sixth Cause of Action attempts. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (citing *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 500 (S.D.N.Y. 2023). The RPMWBL contains no private right of action, and therefore may not serve as a basis for a GBL claim based on these requirements unrelated to alleged deception.

Additionally, Mirsberger's Sixth Cause of Action does not concern consumer-oriented conduct as required to state a claim under the GBL. An act must "have a broader impact on consumers at large" to be consumer-oriented, *Kacocha v. Nestle Purina Petcare Co.*, No. 15CV5489, 2016 WL 4367991, at *13 (S.D.N.Y. Aug. 12, 2016); an act is not consumer-oriented if it was instead "'tailored' to meet" a consumer's "individualized requirements," *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 549 (S.D.N.Y. 2014). Mirsberger's claim is premised on text messages with his VIP Host, not on conduct directed to the broader public. He admits the text messages were "individual[]" contacts between Mirsberger and his VIP Host and even characterizes them as "direct advertisements" sent specifically to him, defined by statute as communications "to a specific individual." *See* RPMWBL § 1363; Compl. ¶¶ 316–17.

**III.** **The Fraud-Based Claims Fail For Additional Reasons (Seventh Through Tenth Causes Of Action).**

    **A.** **Plaintiffs Have Not Alleged Reasonable Reliance.**

Neither Plaintiff pleads justifiable reliance on alleged misleading statements, let alone with the requisite specificity under Rule 9(b). "To plead common law fraud, a plaintiff must allege with particularity that it actually relied upon the supposed misstatements." *In re Bear Stearns Cos., Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014). Reliance must also be "justifiable, both in the sense that the party claiming to have been defrauded was justified in believing the representation and that he was justified in acting upon it." *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co.*, 785 F. Supp. 411, 419 (S.D.N.Y. 1992). A plaintiff alleges actual reliance by alleging that the defendant's conduct was "an 'essential or inducing cause'" of the plaintiff's actions. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278 (2d Cir. 1992), *abrogated on other grounds as recognized in Gerosa v. Savasta & Co.*, 329 F.3d 317, 322–23 (2d Cir. 2003); *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 399 (S.D.N.Y. 2020) ("[Plaintiffs] must plead that they actually relied on the alleged misrepresentations, specifically that the misrepresentation was a 'substantial factor' in their decision.").

While Mirsberger alleges that he "saw advertisements" for the New Customer Promotion (without identifying which ones) "before he funded his accounts on DraftKings" (Compl. ¶ 175), he does not allege that those advertisements were the reason that he funded an account, or that he took any other action in reliance on those advertisements. Likewise for the No Sweat Promotion, Plaintiffs make only conclusory allegations that the promotion caused them to wager and lose money. To the contrary, Mirsberger's admission that he entered the No Sweat Promotion "numerous" times belies the notion that the alleged misleading statements in the advertisements

for the promotion caused him to act in a way he would not have otherwise. *See id.* ¶ 41. If it were true that Mirsberger would not have entered the promotion if he had understood it, then he would have stopped entering into it after the first time.

### B. Plaintiffs Have Not Adequately Alleged Intent To Defraud.

A plaintiff must "plead those events which give rise to a strong inference that the defendant had an intent to defraud [and] knowledge of the falsity." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 434–35 (S.D.N.Y. 2023) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). Plaintiffs offer only insufficient conclusory statements as to DraftKings' intent (Compl. ¶¶ 158, 327), rendering the fraud claims subject to dismissal. *See Wheeler*, 652 F. Supp. 3d at 434–35. Plaintiffs' Seventh through Tenth Causes of Action must be dismissed.

### C. Plaintiffs' Ninth Cause of Action For Fraudulent Inducement Fails Because They Allege No Contract Between The Parties.

Fraudulent inducement differs from intentional misrepresentation only in that the former applies specifically where a party has been defrauded into entering a contract. *See City Calibration Ctrs. Inc. v. Heath Consultants, Inc.*, 727 F. Supp. 3d 332, 361 (E.D.N.Y. 2024) (to state a claim for fraudulent inducement under New York law, a plaintiff must, among other things, allege "a material misrepresentation or omission that induced the party to sign the contract") (citation and quotation marks omitted); *see also Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20CV7933, 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) ("[F]raudulent inducement involves a misrepresentation . . . used to induce the defrauded party to sign the contract.") (quotation marks omitted).

Plaintiffs have not alleged that they entered a contract with DraftKings, let alone one that harmed Plaintiffs. The Ninth Cause of Action should be dismissed for that standalone reason.

## IV. The Fifth Cause Of Action For Negligence Should Be Dismissed.

Mirsberger's Fifth Cause of Action asserts a negligence claim premised on the alleged conduct of VIP Hosts. That claim fails because Mirsberger has not pled a cognizable legal duty DraftKings owed to him, let alone breach or injury. His allegations thus fail to satisfy the required elements for a negligence claim.

### A. This Court Should Not Impose The Novel Duties That Mirsberger Alleges.

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quotation marks omitted). "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts." *Id.*

Mirsberger alleges that DraftKings owes a legal duty to "foreseeable victims of gambling addictions," which includes purported duties (1) to "help" customers who "are gambling beyond their means"; (2) to "discover . . . when its users are gambling beyond their means as a result of a gambling addiction"; (3) to "verify the income and source of funds for users who are gambling a substantial amount on its platform"; and (4) to meet unspecified "[i]ndustry standards." Compl. ¶¶ 298–304 (the "Purported Legal Duties"). There is no authority to support the proposition that a gaming operator like DraftKings owes these Purported Legal Duties, and the claim therefore must be dismissed. *See Ludlow Essex Partners LLC v. Wells Fargo Bank, N.A.*, No. 17CV2042, 2017 WL 2963488, at *2 (S.D.N.Y. July 11, 2017) (dismissing negligence claim with prejudice where "plaintiffs have summoned no authority to support the existence of th[e] duty" they allege).

No court applying New York law has ever recognized any of the Purported Legal Duties or imposed them on a gaming operator, and courts in numerous other jurisdictions have uniformly refused to impose the types of legal duties that Mirsberger now seeks to apply. *See, e.g., Merrill*

*v. Trump Ind., Inc.*, 320 F.3d 729, 732–33 (7th Cir. 2003) (holding that Indiana law imposes no duty on casino to eject problem gamer); *Antar v. Borgata Hotel Casino & Spa, LLC*, No. 22CV05785, 2024 WL 1672280, at *4 (D.N.J. Jan. 31, 2024) (rejecting negligence claim against casino operators and online gaming platform regarding problem gaming because "casinos do not owe [the] duty to patrons" that plaintiffs alleged) (citing *Hakimoglu v. Trump Taj Majal Assocs.*, 70 F.3d 291, 294 (3d Cir. 1995), and *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07CV4555, 2008 WL 4372791, at *3 (D.N.J. Sept. 19, 2008)); *Allen v. Caesars Ent. Corp.*, No. 23CV00989, 2023 WL 7181654, at *2 (E.D. Mo. Nov. 1, 2023) (predicting that Missouri Supreme Court would refuse to impose a common-law duty on casinos to protect problem gamblers); *Sherman v. Harrah's New Orleans Casino*, No. 06CV2379, 2008 WL 11509255, at *7 (E.D. La. Feb. 12, 2008) (refusing to impose duty on casinos to identify and exclude problem gamblers); *Jackson v. Boehringer Ingelheim Pharms., Inc.*, No. 06CV0969, 2007 WL 9718196, at *2 (W.D. Mo. Mar. 16, 2007) ("In the absence of any legal support, the Court finds it unreasonable that Missouri would impose these duties upon casinos."); *Logan v. Ameristar Casino Council Bluffs, Inc.*, 185 F. Supp. 2d 1021, 1025 (S.D. Iowa 2002) (casino did not owe common-law duty to prevent problem gamer from gaming); *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W. Va. 2016) (video lottery terminal manufacturers and casinos where terminals are located had no duty to protect users from compulsively gaming); *NOLA 180 v. Harrah's Operating Co.*, 94 So. 3d 886 (La. Ct. App. 2012) (casino had no duty to identify and recognize problem gamblers).

Moreover, courts have refused to hold gaming operators liable for customers' "own decision[s]" to participate in gaming. *See Ristic v. Mach. Zone, Inc.*, No. 15CV8996, 2016 WL 4987943, at *4 (N.D. Ill. Sept. 19, 2016) (noting that "any type of addiction is unfortunate" but declining to impose liability to "protect [a customer] from his own decision to play the Casino");

*Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 469 (D. Md. 2015) ("The Court does not sit in judgment of the entertainment choices that Plaintiff and others like her have made—but it will not allow Plaintiff to foist the consequences of those choices onto an entertainment purveyor that, at least on the face of this Complaint, appears to have done nothing wrong.").

Addressing the issue as a matter of first impression under New York law, this Court should follow other jurisdictions and decline to impose new duties on gaming operators. The imposition of a "legal duty where none existed before . . . must be exercised with extreme care." *Pulka v. Edelman*, 40 N.Y.2d 781, 786 (1976). General principles of New York negligence law counsel against expanding liability in the manner that Plaintiffs urge. "It is 'the responsibility of courts in fixing the orbit of duty, to limit the legal consequences of wrongs to a controllable degree and to protect against crushing exposure to liability.'" *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997) (quoting *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (1985)). Due to "practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another," New York courts generally will not "extend[] liability to defendants for their failure to control the conduct of others"—here, control Plaintiffs themselves and their choices to engage in gaming activity. *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232–33 (2001). To make gaming operators legally responsible for their adult customers' uncoerced and voluntary decisions to bet on DraftKings' sportsbook would create an unworkable standard and slippery slope under New York negligence jurisprudence, and would result in a flood of undue litigation against companies in the industry. *See Donohue v. Copiague Union Free Sch. Dist.*, 64 A.D.2d 29, 33 (N.Y. App. Div. 1978) (holding that courts consider whether proposed new duty will result in "a flood of new litigation" and refusing to impose new duty).

Had the New York legislature wanted to impose the Purported Legal Duties on gaming

operators, it would have done so when it recently amended the RPMWBL. The statutory requirements for online sportsbooks are robust but do not impose such responsibilities upon operators. Indeed, provisions of the RPMWBL indicate that the legislature did not intend for gaming operators to be liable for alleged harm to customers resulting from problem gaming. For example, the RPMWBL requires "mobile sports wagering operators" like DraftKings to implement various measures to address problem gaming, one of which is to establish a program whereby customers can "self-exclu[de]" from gaming activity whenever they so desire. RPMWBL § 1367-a(4)(a)(xii).[13] But the statute immunizes operators from liability if self-excluded individuals decide to engage in gaming activity, providing that operators "*shall not be liable* to any self-excluded person or to any other party in any judicial proceeding for *any harm, monetary or otherwise*, which may arise as a result of a self-excluded person's engaging in gaming activity." *Id.* § 111(2)(b) (emphases added). In other words, even where a customer has self-excluded (which neither Plaintiff alleges they did here), the legislature has made a policy choice that the operator will *not* be liable for harm resulting from continued gaming by that customer. This squarely contradicts Plaintiffs' theory that operators should be liable to customers who operators have "reason to know are gambling beyond their means." Compl. ¶ 299.

Finally, it would be particularly inappropriate to add a new legal duty in tort given the existence of the regulatory scheme described in Section Part I.D and note 13. Sports betting is already comprehensively regulated in New York. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 9,

---

[13] Operators must implement other "responsible gaming" measures, including they must (1) provide information about "problem gambling resources" to any bettor whose lifetime deposits exceed $2,500 and allow the bettor to place "gaming limits or close the account," RPMWBL § 1367-a(4)(a)(xiii); (2) "maintain a publicly accessible internet page dedicated to responsible play" that includes specific information and resources, *id.* § 1367-a(4)(a)(xiv); and (3) prepare an annual "problem gaming plan" to be approved by the agency, *id.* § 1367-a(4)(a)(xv). Plaintiffs do not allege that DraftKings failed to implement these measures.

§§ 5330.1–5330.45. The Gaming Commission has broad authority to enforce these regulations. RPMWBL §§ 104, 1367(5); N.Y. Comp. Codes R. & Regs. tit. 9, § 5330.23(b)(4). This Court should decline to impose tort liability.

### B. Even If DraftKings Owed Mirsberger A Legal Duty, It Did Not Breach.

Even if Mirsberger's purported duty to "help" customers who "are gambling beyond their means" and "discover . . . when its users are gambling beyond their means as a result of a gambling addiction" were legally cognizable (which they are not), Mirsberger's own allegations show that DraftKings did not breach any such duty. Mirsberger alleges that his account was "flagged and forwarded to DraftKings' 'Player Protection Team' for review" and that he was "cut off" by DraftKings when he told his VIP Host that he was not doing "so good" and "had 'lost [his] final $3,400.'" Compl. ¶¶ 232, 234–35. Indeed, the Complaint alleges that DraftKings' practice is to "cut[] users off when they raise a complaint." *Id.* ¶ 217. With regard to the alleged duty to "verify[] the income," Plaintiffs allege that DraftKings does "ask users about their income." *Id.* ¶¶ 221, 223. Finally, Mirsberger's vague allegation that "DraftKings does not meet industry standards" that he fails to specify is insufficient to show breach. *Id.* ¶¶ 304–07.

### C. The Complaint Does Not Adequately Allege Cognizable Injury Caused by Purported Negligence.

Mirsberger has failed to state a claim for negligence also because he does not allege that he suffered an injury due to purported negligence. *See* Compl. ¶¶ 296–313. His conclusory allegations that he sustained "significant damage . . . both financial and emotional" (*id.* ¶ 309) are insufficient to plead injury. *See Geswaldo v. Gottlieb*, No. 24CV2543, 2025 WL 636091, at *2 (S.D.N.Y. Feb. 27, 2025) (allegation that plaintiffs "suffered significant damages from . . . alleged breach" was "conclusory" and "insufficient to plausibly allege the element of damages") (internal quotation marks omitted). To the extent that Mirsberger seeks to recover financial losses, he has

failed to allege the amount he believes he should recover or how that amount should be calculated. Additionally, recovery for financial losses is barred, because "it is well settled that 'New York law holds that a negligence action seeking recovery for economic loss will not lie.'" *Colangelo v. Champion Petfoods USA, Inc.*, No. 18CV1228, 2020 WL 777462, at *15 (N.D.N.Y. Feb. 18, 2020) (negligence claims in false-advertising action were "barred by the economic loss doctrine"); *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 118 (E.D.N.Y. 2021) (in deceptive-labeling case, economic loss doctrine barred negligence claims where "no physical or property harm" was alleged).

## V.     The Tenth Cause Of Action For Unjust Enrichment Should Be Dismissed As Duplicative Of The Other Claims.

Plaintiffs' unjust enrichment claim is duplicative of their other causes of action and should be dismissed. "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see also Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 45–46 (S.D.N.Y. 2023). An unjust enrichment claim is duplicative of other claims if "the factual allegations supporting each claim are the same." *Greene v. Clean Rite Ctrs., LLC*, 714 F. Supp. 3d 134, 151 (E.D.N.Y. 2024). Plaintiffs' Tenth Cause of Action rests on the same purportedly "misleading misrepresentations to Plaintiffs" that underlie their claims under GBL sections 349 and 350, their intentional misrepresentation claims, and their fraudulent inducement claim. Compl. ¶ 361.

## VI.    Plaintiffs May Not Assert Their Eleventh Cause Of Action For Declaratory Judgment.

Plaintiffs impermissibly seek a declaratory judgment that DraftKings breached its obligations in two alleged contracts that Plaintiffs are *not* a party to—the Apple Developer License

Agreement (the "Apple Agreement") and the Google Play Developer Distribution Agreement (the "Google Agreement"). Compl. ¶¶ 372–81. While Plaintiffs claim that they are "intended beneficiaries" (Compl. ¶ 379), that allegation is refuted by the terms of the agreements. The Apple Agreement is "a legal agreement between [DraftKings] and Apple," not Plaintiffs, that confers no rights on Plaintiffs. Declaration of Sarah E. Peterson ISO Defendants' Motion to Dismiss, Ex. 1 at 1, ¶ 14.3 ("This Agreement is not for the benefit of any third parties.").[14] Similarly, the Google Agreement is a "legally binding contract between [DraftKings] and Google," not Plaintiffs, that confers no rights on Plaintiffs. *Id.* Ex. 2 ¶¶ 2.1, 16.4 ("no other person or company will be a third-party beneficiary to this Agreement."). "[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).[15]

## VII.   Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs purport to seek unspecified injunctive relief without a showing of imminent future harm. Compl. ¶¶ 30, 272, 295, 322. "In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future[.]" *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015) (quotation marks omitted). "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). Plaintiffs that have become aware of alleged misrepresentations are not in "danger that they

---

[14] The Court may consider the agreements at this stage because they form the bases of the declaratory judgment claim.

[15] The rule is the same if California law applies. *Sessions Payroll Mgmt., Inc. v. Noble Constr. Co.*, 84 Cal. App. 4th 671, 680–81 (2000) (non-party cannot enforce contract provision where "the contract expressly disclaims that it creates any rights or confers any benefits on third parties").

will again be deceived by them." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (quotation marks omitted).

Were Plaintiffs to enter either promotion at this point, they would do so "with exactly the level of information" that they now possess and could not claim to be deceived or harmed. *See Berni*, 964 F.3d at 147–48. They do not have standing to seek injunctive relief.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

//

//

//

DATED: April 8, 2025                    Respectfully Submitted,


By:    ___/s/ Alan E. Schoenfeld___
       Alan E. Schoenfeld
       Andrew S. Dulberg
       WILMER CUTLER PICKERING
       HALE AND DORR LLP
       7 World Trade Center
       250 Greenwich Street
       New York, NY 10007
       Telephone: 212-937-7294
       Email:  alan.schoenfeld@wilmerhale.com
               andrew.dulberg@wilmerhale.com


       Richard R. Patch *(pro hac vice)*
       Clifford E. Yin *(pro hac vice)*
       Christopher J. Wiener *(pro hac vice)*
       Sarah E. Peterson *(pro hac vice)*
       COBLENTZ PATCH DUFFY & BASS LLP
       One Montgomery Street, Suite 3000
       San Francisco, CA 94104-5500
       Telephone: 415.391.4800
       Facsimile: 415.989.1663
       Email: ef-rrp@cpdb.com
              ef-cey@cpdb.com
              ef-cjw@cpdb.com
              ef-sep@cpdb.com


       Attorneys for Defendants
       DraftKings Inc. and Crown NY Gaming Inc.

## CERTIFICATE OF COMPLIANCE

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c) , I certify that the document contains 8,728 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 8, 2025          By:     */s/ Alan E. Schoenfeld*
                                        Alan E. Schoenfeld