## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Clara De Leon, Eric W. Mirsberger Jr., Joseph Mitchell, and Edward Mendez, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>DraftKings Inc.; Crown NY Gaming LLC,<br><br>        Defendants. | Case No. 1:25-cv-00644<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ...................................................................................2

    I.     Promotions. ...............................................................................................2

    II.    VIP Program. ............................................................................................3

LEGAL STANDARD ..............................................................................................4

ARGUMENT ...........................................................................................................4

    I.     The GBL And Fraud-Based Claims Fail (First Through Fourth, Sixth, And Eighth Through Eleventh Causes of Action). ...........................................4

         A.    Plaintiffs Fail To Allege The Advertisements That They Actually Viewed And Relied Upon. ...................................................................4

         B.    The Promotions Were Not Misleading Or Deceptive. ...............................7

             1.    The Promotional Terms Fully Disclosed All Requirements............7

             2.    Plaintiffs' Interpretations Of The Advertisements Are Unreasonable.....................................................................................10

         C.    Plaintiffs Have Not Alleged A Cognizable Injury Caused By The Promotions. ......................................................................................11

         D.    Plaintiffs Failed To Exhaust Their Remedies With The Gaming Commission. ...................................................................................12

         E.    There Are Additional Reasons To Dismiss The GBL And Fraud-Based Claims. ...............................................................................14

             1.    Intent To Defraud Is Not Adequately Alleged (Eighth Through Eleventh Causes Of Action)............................................14

             2.    The Fraudulent-Inducement Claim Fails Because Plaintiffs Allege No Contract Between The Parties (Tenth Cause of Action). ...........................................................................................14

             3.    The Sixth Cause of Action Under The GBL Fails For Additional Reasons. .................................................................14

             4.    Mendez's GBL Claims Fail The Territoriality Requirement (First Through Fourth And Sixth Causes of Action). ...................15

             5.    The Unjust Enrichment Claim Should Be Dismissed As Duplicative (Eleventh Cause Of Action). ......................................16

    II.    The Negligence/Gross Negligence Claim Fails (Fifth Cause Of Action)..............16

         A.    Mirsberger and Mendez Have Defeated Their Own Negligence Claim By Pleading Intentional Conduct. .................................................16

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

B.     The Terms Of Use Disclaim Liability For Negligence.............................17

C.     This Court Should Not Impose The Novel Duties That Mirsberger And Mendez Allege. ..................................................................................17

D.     The Complaint Does Not Adequately Allege A Cognizable Injury Caused By Purported Negligence. ...............................................................20

III.     The Fiduciary Duty Claim Fails (Seventh Cause of Action)................................21

IV.     The Products-Liability Claims Fail (Twelfth through Fifteenth Causes Of Action). ...............................................................................................................22

A.     The Claims Challenge Intangible Services, Not Products. ........................22

B.     Plaintiffs Have Again Failed To Allege Cognizable Injury......................23

C.     The Design-Defect Claims Fail For Additional Reasons (Twelfth and Fourteenth Causes of Action)..............................................................24

D.     The Failure-To-Warn Claims Fail For Additional Reasons (Thirteenth and Fifteenth Causes of Action). ...........................................26

V.     Plaintiffs Lack Standing To Seek Injunctive Relief. ..............................................26

CONCLUSION....................................................................................................................27

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4 K&D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ................................................................15

*42-50 21st St. Realty LLC v. First Cent. Sav. Bank*,
    No. 20-CV-05370 (RPK) (RLM), 2022 WL 1004187 (E.D.N.Y. Apr. 4, 2022) ...................21

*Advanced Refrigeration & Appliance Co. v. Ins. Co. of N. Am.*,
    349 N.Y.S.2d 195 (App. Div. 1973) .......................................................23

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*,
    737 F.3d 166 (2d Cir. 2013) ...............................................................17, 18

*Allen v. Caesars Ent. Corp.*,
    No. 4:23-CV-00989-MTS, 2023 WL 7181654 (E.D. Mo. Nov. 1, 2023) ..............................18

*Am. Tel. & Tel. Co. v. N.Y. City Hum. Res. Admin.*,
    833 F. Supp. 962 (S.D.N.Y. 1993) ........................................................24

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ..............................................................4

*Antar v. BetMGM, LLC*,
    No. 24-1364, 2025 WL 1219316 (3d Cir. Apr. 28, 2025) ............................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................4

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020) .............................................................27

*Breach v. Loadsmart, Inc.*,
    No. 24-CV-819 (PKC), 2025 WL 753866 (S.D.N.Y. Mar. 10, 2025) ...................17

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) .............................................................15

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d. Cir. 2020) ............................................................8

*City Calibration Ctrs. Inc. v. Heath Consultants, Inc.*,
    727 F. Supp. 3d 332 (E.D.N.Y. 2024) ....................................................14

*In re Columbia Coll. Rankings Action,*
    No. 22 Civ. 5945 (PGG), 2024 WL 1312511 (S.D.N.Y. Mar. 26, 2024) ................................ 5

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.,*
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...................................................................................... 6

*Derbaremdiker v. Applebee's International, Inc.,*
    No. 12CV1058, 2012 WL 4482057, at *1 (E.D.N.Y. Sept. 26, 2012) ..................................... 8

*Donohue v. Copiague Union Free Sch. Dist.,*
    407 N.Y.S.2d 874 (App. Div. 1978) ...................................................................................... 20

*Dwyer v. Allbirds, Inc.,*
    598 F. Supp. 3d 137 (S.D.N.Y. 2022) .................................................................................... 10

*Eberhart v. Amazon.com, Inc.,*
    325 F. Supp. 3d 393 (S.D.N.Y. 2018) .................................................................................... 23

*English v. Danone N. Am. Pub. Benefit Corp.,*
    678 F. Supp. 3d 529 (S.D.N.Y. 2023) .................................................................................... 15

*Erazo v. SCM Grp. N. Am.,*
    No. 16-CV-2386(RRM)(RER), 2019 WL 1044365 (E.D.N.Y. Mar. 5, 2019) ........................ 25

*Ezeiruaku v. Am. Express Co.,*
    No. 20-CV-4004 (LJL), 2020 WL 6135794 (S.D.N.Y. Oct. 19, 2020) .................................. 21

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) .................................................................................................... 7

*Gartenberg v. Cooper Union for the Advancement of Science and Art,*
    765 F. Supp. 3d 245 (S.D.N.Y. 2025) .................................................................................... 20

*Gorran v. Atkins Nutritionals, Inc.,*
    464 F. Supp. 2d 315 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008) ....................... 23

*Greene v. Clean Rite Ctrs., LLC,*
    714 F. Supp. 3d 134 (E.D.N.Y. 2024). Plaintiffs' Eleventh Cause of Action ........................ 16

*Grill v. Philip Morris USA, Inc.,*
    653 F. Supp. 2d 481 (S.D.N.Y. 2009) .................................................................................... 26

*Hamilton v. Beretta U.S.A. Corp.,*
    96 N.Y.2d 222 (2001) ............................................................................................................ 20

*Harris v. Pfizer Inc.,*
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) ............................................................................... 8, 11

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

*Hector v. Hector*,
No. 22CV5990(VB), 2023 WL 6038025 (S.D.N.Y. Sept. 15, 2023) .....................................21

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020) .......................................................................................26

*Howell v. I.N.S.*,
72 F.3d 288 (2d Cir. 1995)........................................................................................................12

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
157 F.3d 933 (2d Cir. 1998).......................................................................................................21

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) ......................................................................................23

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) ....................................................................................................23

*JGV Apparel Grp., LLC v. Abu*,
No. 1:22-CV-9210-GHW-JLC, 2024 WL 2093046 (S.D.N.Y. May 8, 2024) ........................11

*Kacocha v. Nestle Purina Petcare Co.*,
No. 15CV5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ...............................................15

*Kane v. Covidien LP*,
No. 2:23-CV-9207 (NJC) (ARL), 2025 WL 486658 (E.D.N.Y. Feb. 12, 2025)....................24

*Katz 737 Corp. v. Cohen*,
957 N.Y.S.2d 295 (App. Div. 2012) .........................................................................................12

*L–7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011).........................................................................................................9

*Leder v. Am. Traffic Sols., Inc.*,
81 F. Supp. 3d 211 (E.D.N.Y. 2015) ........................................................................................26

*Logan v. Ameristar Casino Council Bluffs, Inc.*,
185 F. Supp. 2d 1021 (S.D. Iowa 2002) ...................................................................................18

*Ludlow Essex Partners LLC v. Wells Fargo Bank, N.A.*,
No. 17CV2042, 2017 WL 2963488 (S.D.N.Y. July 11, 2017).................................................18

*Mason v. Mach. Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) ..........................................................................................19

*McCarthy v. Olin Corp.*,
119 F.3d 148 (2d Cir. 1997).......................................................................................................19

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT**

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2009)......................................................................21

*Merrill v. Trump Indiana, Inc.*,
    320 F.3d 729 (7th Cir. 2003) .............................................................................18

*Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A.*,
    645 F. Supp. 2d 248 (S.D.N.Y. 2009)....................................................................20

*Morrow v. MetLife Invs. Ins. Co.*,
    113 N.Y.S.3d 421 (App. Div. 2019)......................................................................16

*Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*,
    No. 23CV6237, 2024 WL 2978306 (S.D.N.Y. June 12, 2024)........................11, 12

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...............................................................6, 16

*In re New York City Asbestos Litig.*,
    27 N.Y.3d 765 (2016) ........................................................................................22

*NOLA 180 v. Harrah's Operating Co.*,
    94 So. 3d 886 (La. Ct. App. 2012)......................................................................19

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ......................................................24, 25, 26

*Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*,
    751 F. Supp. 3d 195 (E.D.N.Y. 2024) .................................................................17

*Orlander v. Staples Inc.*,
    802 F.3d 289 (2d Cir. 2015)..............................................................................11

*P. Chimento Co. v. Banco Popular de Puerto Rico*,
    617 N.Y.S.2d 157 (App. Div. 1994) ....................................................................21

*Ristic v. Mach. Zone, Inc.*,
    No. 15-CV-8996, 2016 WL 4987943 (N.D. Ill. Sept. 19, 2016) ............................19

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
    192 F. Supp. 3d 348 (S.D.N.Y. 2016)....................................................................5

*Seippel v. Jenkens & Gilchrist, P.C.*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004)..................................................................22

*Sherman v. Harrah's New Orleans Casino*,
    No. 06-2379, 2008 WL 11509255 (E.D. La. Feb. 12, 2008)..................................18

*Silvester v. Selene Fin., LP*,
  No. 7:18-CV-02425 (NSR), 2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) ..........................9

*SM Kids, LLC v. Google LLC*,
  963 F.3d 206 (2d Cir. 2020)................................................................................................4

*Smith v. Apple, Inc.*,
  583 F. Supp. 3d 554 (S.D.N.Y. 2022)..................................................................................5

*Steinberg v. Sea Gate Ass'n*,
  498 N.Y.S.2d 869 (App. Div. 1986) ...................................................................................12

*Stevens v. MTR Gaming Grp., Inc.*,
  788 S.E.2d 59 (W. Va. 2016) ..............................................................................................19

*SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*,
  578 F. Supp. 3d 511 (S.D.N.Y. 2022)................................................................................25

*Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*,
  93 N.Y.S.3d 775 (App. Div. 2019) .....................................................................................11

*Tuosto v. Philip Morris USA Inc.*,
  672 F. Supp. 2d 350 (S.D.N.Y. 2009).................................................................................25

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
  220 F. Supp. 2d 289 (S.D.N.Y. 2002).................................................................................19

*Voss v. Black & Decker Mfg. Co.*,
  59 N.Y.2d 102 (1983)..........................................................................................................25

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ............................................................................................4

*West v. Sambazon, Inc.*,
  750 F. Supp. 3d 356 (S.D.N.Y. 2024)..............................................................................8, 11

*Wheeler v. Topps Co.*,
  652 F. Supp. 3d 426 (S.D.N.Y. 2023)................................................................................14

*Wiggins v. Unilver United States, Inc.*,
  684 F. Supp. 3d 127 (S.D.N.Y. 2023)..................................................................................4

*Wilson v. Midway Games, Inc.*,
  198 F. Supp. 2d 167 (D. Conn. 2002).................................................................................23

*Wright v. Publishers Clearing House, Inc.*,
  372 F. Supp. 3d 61 (E.D.N.Y. 2019) ...................................................................................5

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

*Wright v. TD Bank, N.A.*,
  No. 24-CV-2356 (PKC), 2025 WL 89544 (S.D.N.Y. Jan. 14, 2025).....................................17

*Ziencik v. Snap, Inc.*,
  No. CV 21-7292-DMG (PDX), 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ........................23

**Statutes & Rules**

N.Y. Gen. Bus. Law
    § 349.......................................................................................................................... *passim*
    § 350.......................................................................................................................... *passim*

Racing, Pari-Mutuel Wagering and Breeding Law, Ch. 47-A, Art. 13, Tit. 7,
    §104(6)...............................................................................................................................13
    §1367(5).............................................................................................................................13
    §1367-a ..............................................................................................................................12
    §1367-a(4)(a)(x)-(xv).........................................................................................................13

Rule 9(b) ......................................................................................................................1, 5, 6

Rule 12(b)(1) .........................................................................................................................4

Rule 12(b)(6) .........................................................................................................................4

**Other Authorities**

N.Y. Comp. Codes R. & Regs. tit. 9,
    §5325.6...............................................................................................................................13
    §5329.37.............................................................................................................................13
    §5329.37(b).........................................................................................................................13
    §§5330.1-5330.45 ..............................................................................................................20
    §5330.23(b)(4) ...................................................................................................................13
    §5330.34.............................................................................................................................13
    §5330.38.............................................................................................................................13
    §5330.45.............................................................................................................................13

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT

## INTRODUCTION

DraftKings Inc. operates DK Sportsbook, an online platform where customers can bet on sports contests. In a sprawling Amended Class Action Complaint ("FAC"), Plaintiffs reallege various claims concerning two DraftKings promotions and DraftKings' VIP loyalty program. Plaintiffs' amendments fail to cure the many legal and pleading defects raised in DraftKings' prior motion to dismiss.

First, the claims for fraud and under the New York General Business Law ("GBL") remain defective. To comply with Rule 9(b) and the pleading requirements for GBL claims, Plaintiffs must allege the specific advertisements that they saw and relied upon. Instead, Plaintiffs allege only that they saw advertisements that are "similar," in unidentified ways, to advertisements copied into the FAC that no Plaintiff has actually ever seen. This allegation wholly fails to put DraftKings on notice of the alleged misrepresentations that it must defend against. Even if the advertisements had been properly pled, the promotions are not deceptive; they are subject to terms that Plaintiffs concede were fully disclosed. Nor have Plaintiffs alleged that they were injured by the promotions, or that they exhausted their remedies with the New York State Gaming Commission before filing suit.

Second, Plaintiffs have not even tried to cure the deficiencies in their negligence claim. That claim is defective because, among other reasons, Plaintiffs waived any negligence claim when they agreed to DraftKings' Terms of Use, pled themselves out of a claim by alleging intentional conduct, failed to plead a legal duty that was owed to them, and alleged only economic and emotional injuries.

Finally, the FAC's new claims—for breach of fiduciary duty and products liability—fare no better. DraftKings employees are not fiduciaries. DraftKings offers services, not products.

The FAC should be dismissed entirely and with prejudice.

Case No. 1:25-cv-00644
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## FACTUAL ALLEGATIONS

Plaintiffs Clara De Leon, Eric Mirsberger, Jr., Joseph Mitchell, and Edward Mendez are DraftKings[1] customers who bring a putative class action concerning (1) two DraftKings Promotions by which users could earn site credits (called DK Dollars) to use on DK Sportsbook and (2) the experiences that Mirsberger and Mendez allegedly had with their VIP hosts.

## I.    Promotions.

The FAC contains allegations regarding (1) the "New Customer Promotion," which offered up to $1,000 in DK Dollars to new customers who deposited funds and placed wagers of certain types and amounts within 90 days of signing up for a DraftKings account; and (2) the "No Sweat Promotion," which offered a "Bonus Bet" in DK Dollars in the amount of a customer's initial wager where a customer opted into the promotion, wagered, and lost. FAC ¶¶151, 206.

Mirsberger, Mitchell, and Mendez entered the New Customer Promotion. *Id.* ¶¶45, 48, 178. They claim that it is misleading because they did not understand that the bonus was not awarded in cash and, to receive the highest bonus, a customer had to "deposit $5,000," "bet $25,000 within 90 days," and place those bets "on wagers with odds of '-300 or longer.'" *Id.* ¶206(a)-(c).

De Leon, Mirsberger, Mitchell, and Mendez allege they entered the No Sweat Promotion "countless" times. *Id.* ¶¶40, 44, 48, 176–78. They claim that it is deceptive because they did not understand when opting into it that the Bonus Bet is not awarded in cash and expires after a certain period, and because a customer cannot "cash out a refund if they lose" their first bet "but must

---

[1] DraftKings Inc. and Crown NY Gaming Inc. are referred to as "DraftKings" for purposes of this Motion. Crown NY Gaming Inc. is a subsidiary of DraftKings. FAC ¶53.

The FAC is facially deficient as to the second named defendant. The original complaint named Crown NY Gaming Inc. and made allegations about that entity. Compl. ¶43. The FAC purported to change the caption to name a different entity, Crown NY Gaming LLC, but makes no allegations against that entity, and Plaintiffs have requested no summons for it.

instead place another bet." *Id*. ¶¶149, 181–82. Plaintiffs "discover[ed]" this information when they entered the promotion, and, upon losing, "received an expiring 'Bonus Bet.'" *Id*. ¶¶40, 44, 158.

## II.    <u>VIP Program.</u>

Mirsberger and Mendez allege that they were assigned "VIP Host[s]" who sent them text messages and offered them promotions and site credits (upon Plaintiffs' requests), at times after breaks, losses, or being told of Plaintiffs' financial difficulties. *Id*. ¶¶208, 211, 251–55, 268, 275–79, 283, 292–93. The hosts allegedly did not provide information about problem gambling. *Id*. ¶253. Mendez alleges that he submitted financial information when he created his DraftKings account, but the hosts allegedly did not verify proof of income. *Id*. ¶¶268, 274, 281.

Mendez and Mirsberger allege that their finances suffered, and Mendez alleges personal and emotional hardship. *Id*. ¶¶271–72, 278, 289–90.

*    *    *

Based on these allegations, Plaintiffs bring causes of action for (1) Violation of New York GBL § 349 (challenging the No Sweat Promotion); (2) Violation of GBL § 350 (challenging the No Sweat Promotion); (3) Violation of GBL § 349 (challenging the New Customer Promotion); (4) Violation of GBL § 350 (challenging the New Customer Promotion); (5) Negligence/Gross Negligence (asserted on behalf of a purported "VIP Host Targeted Class"); (6) Violation of GBL §§ 349 & 350 (asserted on behalf of a purported "VIP Host Targeted Class"); (7) Breach of Fiduciary Duty (asserted on behalf of a purported "VIP Host Targeted Class"); (8) Intentional Misrepresentation (challenging the No Sweat Promotion); (9) Intentional Misrepresentation (challenging the New Customer Promotion); (10) Fraudulent Inducement; (11) Unjust Enrichment; (12) Strict Liability – Design Defect; (13) Strict Liability – Failure to Warn; (14) Negligence – Design Defect; (15) Negligence – Failure to Warn.

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## LEGAL STANDARD

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Factual allegations are accepted, but conclusory allegations are not credited. *Id.* When an allegation in a complaint is contradicted by a properly considered extrinsic document, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). "A plaintiff must demonstrate standing separately for each form of relief sought, and a plaintiff seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Wiggins v. Unilver United States, Inc.*, 684 F. Supp. 3d 127, 139 (S.D.N.Y. 2023) (cleaned up).

## ARGUMENT

### I.    The GBL And Fraud-Based Claims Fail (First Through Fourth, Sixth, And Eighth Through Eleventh Causes of Action).

The First, Second, Third, Fourth, and Sixth Causes of Action challenge the New Customer Promotion and No Sweat Promotion under the GBL; the Eighth, Ninth, Tenth, and Eleventh Causes of Action challenge those Promotions under various theories sounding in fraud. These claims suffer from a host of pleading and legal defects, each of which is independently fatal.

#### A.    Plaintiffs Fail To Allege The Advertisements That They Actually Viewed And Relied Upon.

To state a false-advertising or fraud-based claim, Plaintiffs must "specify the content of the representations, advertisements, and promotions" that they saw, explain why they are false, and plead that they relied on them. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997). Although the FAC includes several purported screenshots of No Sweat Promotions (FAC ¶¶159

(fig. 3), 163 (fig. 6), 165 (fig. 7)) and New Customer Promotions (*id.* ¶¶188–89, 199 (figs. 8-11)), it contains no allegations that Plaintiffs saw or relied upon the advertisements depicted in those screenshots.[2] The FAC fails to identify any advertisement that was actually seen by Plaintiffs and caused them to take any action.

Those omissions are fatal to Plaintiffs' fraud and GBL claims challenging the Promotions. The fraud-based claims are subject to Rule 9(b)'s heightened pleading requirements and must be pled with particularity.[3] A complaint "fails to allege fraud with the requisite particularity" if it "does not specify which statements the plaintiffs viewed or when." *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022). Likewise, GBL claims, though not subject to Rule 9(b), are nonetheless dismissed where, as here, a complaint "fails to identify the specific advertisements seen by each plaintiff." *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019). Each plaintiff must "describe[] in detail the allegedly misleading and deceptive

---

[2] The FAC also includes several screenshots of advertisements for promotions titled "Risk-Free Bet." *See* FAC ¶¶145 (fig. 2), 159 (figs. 4 & 5). Though Plaintiffs conflate that promotion with the No Sweat Promotion, no Plaintiff has validly challenged promotions containing "Risk Free" language. As explained in the prior motion to dismiss the original complaint, Plaintiffs allege that DraftKings stopped using the term "Risk Free" in late 2022, before De Leon and Mirsberger deposited funds in 2023. *Id.* ¶¶40, 42, 156. Thus, according to Plaintiffs, De Leon and Mirsberger did not enter promotions containing the words "Risk-Free" and lack standing to challenge that language. Mendez allegedly placed a bet "pursuant to" a "Risk-Free" promotion (that is not screenshotted or described) that he saw in New Jersey in late 2021. *Id.* ¶178. GBL claims must be premised on a New York transaction and brought "within three years" of the allegedly "deceptive act." *See In re Columbia Coll. Rankings Action*, No. 22 Civ. 5945 (PGG), 2024 WL 1312511, at *10 (S.D.N.Y. Mar. 26, 2024). Mendez did not bring his claims until May 2025, over three years later. While Mitchell claims to have entered a risk-free promotion (FAC ¶48) and vaguely claims to have "seen and heard [a] . . . 'Risk Free' advertisement" (*id.* ¶177), he alleges none of the required information—the content of the advertisement he saw, when and where he allegedly saw it, or that he relied on it.

[3] Rule 9(b) applies to the unjust enrichment claim because it is premised on claims of fraudulent conduct. *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016); FAC ¶¶440-49.

statements . . . upon which he relied in purchasing the product." *See Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014).

DraftKings raised these points in its initial motion to dismiss. Plaintiffs still fail to allege which specific promotions they viewed and relied on. Adding allegations that Plaintiffs viewed advertisements that "were materially similar" to and "like" the advertisements that are copied into the FAC does not cure the deficiency for two reasons. FAC ¶¶179, 200.

First, Plaintiffs cannot meet the Rule 9(b) and GBL pleading requirements by presenting a few "example" advertisements and vaguely claiming they saw similar ones. They fail to specify when the advertisements they saw ran, when Plaintiffs allegedly saw them, or how the content matched or differed from the "examples" in the FAC. Without this information, Plaintiffs cannot bring plausible claims, much less sufficiently particular claims, that hinge on specific features such as text size (FAC ¶¶203, 206, 225), hyperlink placement (*id.* ¶¶87, 163), the order of the subjects in the terms and conditions (*id.* ¶226), and wording (*compare* FAC ¶59 (fig. 3) ("No Sweat") *with id.* fig. 4 ("Risk-Free")). Even the "example" advertisements vary and, as Plaintiffs acknowledge, change over time. *Id.* ¶¶160, 163. Plaintiffs' allegation that what they saw is "like" a variety of dissimilar advertisements is meaningless.

Second, Plaintiffs still have not alleged that they relied on any of the advertisements in the FAC, so the advertisements in the FAC should not be considered. *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 n.4 (E.D.N.Y. 2017) (declining to consider advertisements that "Plaintiff never claims he . . . relied on"). In fact, Plaintiffs' admissions that they entered the No Sweat Promotion "numerous" and "countless" times belie the notion that they relied on allegedly omitted information, and confirm that they cannot plausibly plead reliance. FAC ¶¶45, 48. If Plaintiffs had relied on the alleged omissions, then they would have stopped entering into the No Sweat

Promotion after the first time—when they admit that they "discover[ed]" how the promotion operates—and would not have entered it "countless" additional times. *Id.* ¶¶40, 44, 142, 158. Failure to plead reliance on specific advertisements is independently enough to dismiss the First through Fourth, Sixth, and Eighth through Eleventh Causes of Action.

### B.    The Promotions Were Not Misleading Or Deceptive.

Even if Plaintiffs had alleged that they viewed and relied upon the advertisements in the FAC—and they do not—the GBL and fraud-based claims still fail because those advertisements are not misleading.

Proof of a misrepresentation or misleading omission is required to state claims under GBL sections 349 and 350 and for fraud. An act is misleading under the GBL if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.*

Here, there was no deception for two reasons. First, the terms for each promotion fully disclosed the requirements—and Plaintiffs admit they were "presented with the full terms." *See* FAC ¶231. Second, reasonable consumers would not have interpreted phrases "No Sweat" or "up to $1,000" as Plaintiffs claim to have interpreted them.[4] These claims fail as a matter of law and must be dismissed.

### 1.    The Promotional Terms Fully Disclosed All Requirements.

The GBL and fraud-based claims fail because the terms of each Promotion fully explained the requirements. The Court must consider the full terms, which provide "the entire context," to

---

[4] Plaintiffs' allegations about "risk-free" are irrelevant because, as explained *supra* note 2, no Plaintiff has timely alleged that they entered a promotion in response to that language.

determine "what a reasonable consumer would believe." *See West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 368 (S.D.N.Y. 2024). As a result, "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d. Cir. 2020) (citations and internal quotation marks omitted). This principle applies with particular force in cases, like this one, premised on an alleged omission, because a GBL claim "based on a material omission . . . must allege that 'the business alone possesses material information that is relevant to the consumer and fails to provide this information.'" *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 244 (S.D.N.Y. 2022) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Plaintiffs cannot meet this burden where the allegedly omitted information was provided in the promotional terms.

In *Derbaremdiker v. Applebee's International, Inc.*, the court applied these principles in an analogous context. No. 12CV1058, 2012 WL 4482057, at *1 (E.D.N.Y. Sept. 26, 2012). There, the plaintiff participated in a sweepstakes by completing a guest survey regarding his experience at an Applebee's. *Id.* The plaintiff brought claims under sections 349 and 350, alleging he believed he was competing only against other Applebee's customers and for multiple prizes, when he was actually competing against the patrons of thirty businesses and for only two prizes. *See id.* at *2. The receipt, which contained the offer, stated "[s]ee Website for rules/details," and the website contained a hyperlink to the official rules. *Id.* at *6. The court determined that plaintiff had shown no misleading conduct under the GBL: "[b]ecause the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled." *Id.*

The same is true here:

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT

*New Customer Promotion*. Plaintiffs[5] posit that the New Customer Promotion is misleading because, to receive the maximum bonus of $1,000, a customer had to deposit $5,000 and bet $25,000 within 90 days on wagers with minimum odds of -300. FAC ¶¶192, 194. Plaintiffs also appear to complain that the bonus is awarded in site credits (i.e., DK Dollars) rather than in cash. *Id.* ¶197.

As Plaintiffs admit, however, the New Customer Promotion is subject to terms that "explain[]" all of that and, in their words, "reveal[] the truth" about the promotion. *Id.* ¶¶206, 226; *see also id.* ¶231 ("a user is presented with the full terms of a promotion"); Declaration of Gary Wimbridge In Support Of Defendants' Motion to Dismiss ("Wimbridge Decl.") ¶¶5–7 & Exs. 1 & 2.[6] DraftKings prominently and repeatedly disclosed that customers: (1) had to deposit $5,000 to qualify for $1,000 DK Dollars; (2) had to bet $25,000 within 90 days to earn the maximum bonus; (3) had to place bets with minimum odds of -300; and (4) the bonus would be in DK Dollars. *See id.*

*No Sweat Promotion.* Plaintiffs allege that DraftKings omitted the following facts about the No Sweat Promotion: (1) the Bonus Bet is not awarded "as cash" (FAC ¶182); (2) the Bonus Bet expires after a certain period (*id.* ¶152); (3) a customer cannot "cash out a refund if they lose"

---

[5] The claims challenging the New Customer Promotion are brought only by Mirsberger, Mitchell, and Mendez. *See* FAC ¶¶353, 369.

[6] Though not alleged in the Complaint, this Court may consider the full terms. A "plaintiff's failure to include matters of which as pleader he had notice and which were integral to his claim—and that he apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (cleaned up). On a pleading motion, "the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit." *Silvester v. Selene Fin., LP*, No. 7:18-CV-02425 (NSR), 2019 WL 1316475, at *1 n.1 (S.D.N.Y. Mar. 21, 2019). The Complaint contains many references to the terms of the Promotions, and Plaintiffs admit they exist. FAC ¶¶4, 87, 93, 111, 158, 165.

their first bet "but must instead place another bet . . . that they receive" (*id.* ¶149); and (4) "when a customer places and wins a 'Bonus Bet,' they do not receive the stake back" but instead receive their "winnings, minus 9% vig" (*id.* ¶154). Again, all of these requirements were disclosed in the advertisements and, in Plaintiffs' words, "reveal[ed]" to them in the official terms. *Id.* ¶¶226, 231. Plaintiffs include the full terms of the No Sweat Promotion and a March 2024 advertisement for it, both of which vitiate Plaintiffs' assertion that the promotion was misleading. *Id.* ¶¶159 (fig. 3), 165 (fig. 7).

## 2.    Plaintiffs' Interpretations Of The Advertisements Are Unreasonable.

The Promotions are not deceptive for the independent reason that Plaintiffs fail to "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances" would believe what Plaintiffs claim they believed. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). A court may "determin[e] as a matter of law that an allegedly deceptive practice would not have misled a reasonable customer." *See id.* (cleaned up).

Plaintiffs allege that a "no sweat" bet should mean a consumer can "simply cash out a refund if they lose" and that the consumer "receive[s] the stake back." FAC ¶¶149, 154. They allege that a "deposit bonus up to $1,000" should mean whatever amount they deposit should be "'matched' in full" and that the bonus funds should then be "withdraw[able]." *Id.* ¶¶152, 204. Even removed from the context of the terms of each promotion, *see supra* Part I.B.1, nothing about the words "no sweat" promises specifically a cash refund of the stake, as opposed to the Bonus Bet that the promotions—and the screenshots in the FAC—in fact offer. Likewise, Plaintiffs' belief that the phrase "get a deposit bonus up to $1,000" meant that their deposits would be matched and that the bonus could be withdrawn, is baseless. Nothing in the advertisements promises a 1-for-1 match (as opposed to the 20% match that the promotion offers) or the ability to withdraw the bonus

(i.e., free cash). Plaintiffs read these features into the advertisements. "A plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression." *Harris*, 586 F. Supp. 3d at 243–44 (dismissing false-advertising claim). It is insufficient that Plaintiffs apparently "thought" the advertisements "meant more" than the advertisements actually say. *See West*, 750 F. Supp. 3d at 372 (dismissing false-advertising claim).

## C.    Plaintiffs Have Not Alleged A Cognizable Injury Caused By The Promotions.

To plead injury under GBL sections 349 and 350, a plaintiff must "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). To adequately allege fraud injury, a plaintiff must allege "actual pecuniary loss sustained as the direct result of the wrong" and a claim is "fatally deficient" if it does not allege "compensable damages." *Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*, 93 N.Y.S.3d 775, 777 (App. Div. 2019) (internal quotation omitted).

Plaintiffs have not satisfied these pleading requirements. They do not claim that they failed to receive the "full value" of a purchase. *See Orlander*, 802 F.3d at 302. Nor could they plausibly do so, having "received exactly what [they] thought [they] w[ere] purchasing—a gambling experience where winning was not guaranteed." *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *3 (3d Cir. Apr. 28, 2025) (concluding that plaintiff alleged no injury for consumer-fraud claim). Further, Plaintiffs allege that their injury from the New Customer Promotion is "monetary losses when they failed to receive a cash deposit match." FAC ¶363. However, failure to receive an expected *benefit* from DraftKings is not a pecuniary loss. *See JGV Apparel Grp., LLC v. Abu*, No. 1:22-CV-9210-GHW-JLC, 2024 WL 2093046, at *7 (S.D.N.Y. May 8, 2024) (distinguishing "actual pecuniary loss" from "loss-of-benefit" damages, which are only recoverable in a contract action). Plaintiffs allege that the No Sweat Promotion caused them to

incur "monetary losses when they failed to receive cash refunds for bets they placed and lost." FAC ¶338. This theory fails as well. Premising damages on gambling losses presents "metaphysical problems of proximate causation"; it is not possible "to differentiate the losses [a plaintiff] suffered as a result of the defendants' alleged conduct versus those losses he suffered as a natural result of playing a game" with a chance and expectation of losing. *See Antar*, 2025 WL 1219316, at *3.

### D.    <u>Plaintiffs Failed To Exhaust Their Remedies With The Gaming Commission.</u>

Plaintiffs' GBL and fraud-based claims are subject to dismissal for the additional reason that Plaintiffs were required to, but did not, "plead . . . that they have exhausted their administrative remedies." *See Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 23CV6237, 2024 WL 2978306, at *3 (S.D.N.Y. June 12, 2024). "The doctrine of exhaustion of administrative remedies requires that one first exhaust all available administrative channels before looking to the courts for relief." *Steinberg v. Sea Gate Ass'n*, 498 N.Y.S.2d 869 (App. Div. 1986). The requirement to exhaust "may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995). If the "intent of the legislature" that "matters be decided by [the agency] in the first instance can be reasonably inferred from" a "statutory scheme," exhaustion is required, even if the statute does not "expressly say that [the agency] alone is to decide [the] issues." *See Katz 737 Corp. v. Cohen*, 957 N.Y.S.2d 295, 298 (App. Div. 2012).

Plaintiffs were required to first bring their claims to the New York Gaming Commission. This requirement aligns with the legislature's intent, which can be "reasonably inferred" from the detailed regulatory scheme governing promotion-related and responsible-gaming matters. *See id.*; Racing, Pari-Mutuel Wagering and Breeding Law, Ch. 47-A, Art. 13, Tit. 7 ("RPMWBL"), §1367-a. The administrative scheme imposes on mobile sports betting operators numerous requirements

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

regarding advertising and responsible gaming. N.Y. Comp. Codes R. & Regs. tit. 9, §§5325.6, 5329.37, 5330.38, 5330.34, & 5330.45. As part of this scheme, operators must submit proposed promotions to the Gaming Commission *for review and approval in advance. Id.* §5330.38(a), (a)(2).[7]

Procedurally, the RPMWBL allows customers to seek recourse against operators for the type of violations that Plaintiffs have alleged. It authorizes bettors to "file a complaint alleging a violation of the provisions of [the statute] with the commission." RPMWBL §1367(5); N.Y. Comp. Codes R. & Regs. tit. 9, §5330.23(b)(4). The agency has the power to conduct "hearings pertaining to violations of" the Act, RPMWBL §104(6), and is authorized to "take action against a licensee in the event the commission concludes that such licensee violated a law, including regulation," N.Y. Comp. Codes R. & Regs. tit. 9, §5330.23(b)(4). Plaintiffs' First, Second, and Sixth Causes of Action under GBL sections 349 and 350 expressly allege that DraftKings violated provisions of the RPMWBL and its implementing regulations related to advertising. FAC ¶¶332 (citing N.Y. Comp. Codes R. & Regs. tit. 9, §§5329.37, 5325.6), 347 (citing N.Y. Comp. Codes R. & Regs. tit. 9, §5329.37), 397, 399–400. Plaintiff's Third and Fourth Causes of Action under the GBL, as well as their Eighth through Eleventh Causes of Action, allege that DraftKings' promotional advertising is misleading, bringing the claims within the scope of the regulations' prohibitions on "misleading information." N.Y. Comp. Codes R. & Regs. tit. 9, §§5330.38, 5329.37(b). The Fifth, Seventh, and Twelfth through Fifteenth Causes of Action concern responsible gaming, which is also extensively addressed by the RPMWBL. RPMWBL §1367-a(4)(a)(x)-(xv); N.Y. Comp. Codes R. & Regs. tit. 9, §5330.34.

Plaintiffs have not pled that they sought redress with the Gaming Commission for these

---

[7] The Gaming Commission has approved both of the Promotions.

alleged violations. Their claims should be dismissed as a matter of law.

**E.     There Are Additional Reasons To Dismiss The GBL And Fraud-Based Claims.**

   **1.    Intent To Defraud Is Not Adequately Alleged (Eighth Through Eleventh Causes Of Action).**

A plaintiff must "plead those events which give rise to a strong inference that the defendant had an intent to defraud [and] knowledge of the falsity." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 434–35 (S.D.N.Y. 2023) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). Plaintiffs offer only conclusory statements about DraftKings' alleged intent (FAC ¶¶174, 418), rendering the fraud claims subject to dismissal.

   **2.    The Fraudulent-Inducement Claim Fails Because Plaintiffs Allege No Contract Between The Parties (Tenth Cause of Action).**

Fraudulent inducement differs from intentional misrepresentation only in that the former applies specifically where a party has been defrauded into entering a contract. *See City Calibration Ctrs. Inc. v. Heath Consultants, Inc.*, 727 F. Supp. 3d 332, 361 (E.D.N.Y. 2024) (to state a claim for fraudulent inducement under New York law, a plaintiff must, among other things, allege "a material misrepresentation or omission that induced the party to sign the contract") (cleaned up). The fraudulent-inducement claim must be dismissed, because Plaintiffs have not alleged that they were defrauded into entering any contract with DraftKings, let alone a contract that harmed them.

   **3.    The Sixth Cause of Action Under The GBL Fails For Additional Reasons.**

Plaintiffs' Sixth Cause of Action[8] is a GBL claim based on alleged violations of certain technical requirements under the RPMWBL. FAC ¶¶394–402. A plaintiff "cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under

---

[8] Only Mirsberger and Mendez assert this claim. FAC ¶395.

Case No. 1:25-cv-00644

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

GBL § 349," which is precisely what the Sixth Cause of Action attempts. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005). The RPMWBL contains no private right of action and therefore may not serve as a basis for a GBL claim based on requirements unrelated to alleged deception.

Additionally, the Sixth Cause of Action does not concern consumer-oriented conduct as required to state a claim under the GBL. An act must "have a broader impact on consumers at large" to be consumer-oriented. *Kacocha v. Nestle Purina Petcare Co.*, No. 15CV5489, 2016 WL 4367991, at *13 (S.D.N.Y. Aug. 12, 2016). An act is not consumer-oriented if it was instead "'tailored' to meet" a consumer's "individualized requirements." *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 549 (S.D.N.Y. 2014). Plaintiffs' claim is premised on direct text messages between two customers and their VIP hosts, not on conduct directed to the broader public, and they thus cannot allege the elements required to survive a motion to dismiss.

### 4.    Mendez's GBL Claims Fail The Territoriality Requirement (First Through Fourth And Sixth Causes of Action).

"To state a claim under either section [349 or 350 of the GBL], the transaction in which the consumer is deceived must occur in New York," irrespective of "the residency of the parties" or "where the defendant allegedly hatched a scheme." *English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 536 (S.D.N.Y. 2023) (cleaned up). Facts satisfying territoriality "must be pleaded." *Id.*

Mendez alleges that he created his DraftKings account while he was in New Jersey in 2022, and many of the events concerning his claims appear to have occurred while he was living in New Jersey. FAC ¶¶50, 275–302. Indeed, it appears that Mendez first entered the Promotions—and would have "discovered" everything he claims was misleading about them (*see id.* ¶142)—while in New Jersey. *Compare id.* ¶275 (entered promotions) *with* ¶302 (moved to New York, apparently

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

later). He alleges that he moved to New York, but fails to allege when, and it is therefore not possible to identify what relevant transactions, if any, Mendez made while in New York. His GBL claims therefore must be dismissed.

### 5. The Unjust Enrichment Claim Should Be Dismissed As Duplicative (Eleventh Cause Of Action).

"[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson*, 246 F. Supp. 3d at 679. Claims are duplicative if "the factual allegations supporting each claim are the same." *Greene v. Clean Rite Ctrs., LLC*, 714 F. Supp. 3d 134, 150 (E.D.N.Y. 2024). Plaintiffs' Eleventh Cause of Action rests on the same purportedly "misleading misrepresentations to Plaintiffs" (FAC ¶452) that underlie their GBL claims, their intentional-misrepresentation claims, and their fraudulent-inducement claim.

## II. The Negligence/Gross Negligence Claim Fails (Fifth Cause Of Action).

The Fifth Cause of Action, brought only by Mirsberger and Mendez, asserts a negligence claim premised on the alleged conduct of their VIP hosts. The claim fails because: (1) Mirsberger and Mendez have pled intentional conduct, defeating their own claim; (2) the Terms of Use ("TOU") to which the parties agreed waives liability for negligence; and (3) the allegations do not satisfy the required elements for a negligence claim.

### A. Mirsberger and Mendez Have Defeated Their Own Negligence Claim By Pleading Intentional Conduct.

The negligence claim fails at the outset because Plaintiffs allege DraftKings' purported "negligence was intentional." FAC ¶390. "[I]ntentional conduct . . . cannot form the basis of a claim founded on negligence." *Morrow v. MetLife Invs. Ins. Co.*, 113 N.Y.S.3d 421, 423 (App. Div. 2019). "When a complaint alleges actions that are 'intentional and deliberate . . . in their

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

nature, the claims 'are outside the ambit of actionable negligence'" and "must be dismissed." *Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*, 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024).

### B. The Terms Of Use Disclaim Liability For Negligence.

Mirsberger and Mendez's negligence claim is precluded by the TOU, which disclaim liability for negligence. Declaration of Jeremy McAuley in Support of Defendants' Motion to Dismiss ("McAuley Decl.") ¶¶4–5, Exs. 1 & 2. The TOU—which Mirsberger and Mendez agreed to (*id.* ¶¶4–5)—state: "Under no circumstances shall the company . . . be liable to you for any loss or damages of any kind . . . that are directly or indirectly related to . . . the use of . . . the website . . . whether in an action of contract, negligence, [or] strict liability tort." *Id.* Ex. 1 at 5 & Ex. 2 at 6 (capitalization omitted).[9] "[A]n exculpatory provision ordinarily will be enforced when its language expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence." *Wright v. TD Bank, N.A.*, No. 24-CV-2356 (PKC), 2025 WL 89544, at *4 (S.D.N.Y. Jan. 14, 2025) (quotation marks omitted).

### C. This Court Should Not Impose The Novel Duties That Mirsberger And Mendez Allege.

Plaintiffs' claims must fail because they cannot allege any legal duty that DraftKings owed to them. "[A] threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quotation marks omitted). "The existence and scope of an alleged tortfeasor's duty is, in

---

[9] The TOU may be considered. As explained *supra* note 6, at the pleading stage, a court may review documents "integral" to a claim, including those on which a claim "stands or falls." *Breach v. Loadsmart, Inc.*, No. 24-CV-819 (PKC), 2025 WL 753866, at *5-6 (S.D.N.Y. Mar. 10, 2025). A company's terms of service are "integral" documents when they "set[] forth the terms and conditions that govern [plaintiff's] contractual relationship with [defendant]." *Id.* Plaintiffs acknowledge the existence of the TOU (FAC ¶294), and the disclaimer in the TOU is dispositive of the negligence claim.

the first instance, a legal question for determination by the courts." *Id.*

Mirsberger and Mendez allege that DraftKings owes a legal duty to "foreseeable victims of gambling addictions," which includes purported duties (1) to "help" customers who "are gambling beyond their means"; (2) to "discover . . . when its users are gambling beyond their means as a result of a gambling addiction"; (3) to "verify the income and source of funds for users who are gambling a substantial amount"; and (4) to meet unspecified "[i]ndustry standards." FAC ¶¶377–83.

There is no authority to support the proposition that a gaming operator like DraftKings owes such purported legal duties. *See Ludlow Essex Partners LLC v. Wells Fargo Bank, N.A.*, No. 17CV2042, 2017 WL 2963488, at *2 (S.D.N.Y. July 11, 2017) (dismissing negligence claim where "plaintiffs have summoned no authority to support the existence of th[e] duty" they allege). No court applying New York law has ever recognized any of these duties or imposed them on a gaming operator, and federal and state courts in numerous other jurisdictions have uniformly refused to impose the types of legal duties that Mirsberger and Mendez seek to apply. *See, e.g.*, *Antar*, 2025 WL 1219316, at *3 (concluding that there is no "duty of care on casinos towards compulsive gamblers" and noting that "courts across the country that have considered the issue have uniformly rejected imposing such a duty on casinos"); *Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 732–33 (7th Cir. 2003) (holding that Indiana law imposes no duty on casino to eject problem gamer); *Allen v. Caesars Ent. Corp.*, No. 4:23-CV-00989-MTS, 2023 WL 7181654, at *2 (E.D. Mo. Nov. 1, 2023) (holding that Missouri law imposes no common-law duty on casinos to protect problem gamblers); *Sherman v. Harrah's New Orleans Casino*, No. 06-2379, 2008 WL 11509255, at *7 (E.D. La. Feb. 12, 2008) (refusing to impose duty on casinos to identify and exclude problem gamblers); *Logan v. Ameristar Casino Council Bluffs, Inc.*, 185 F. Supp. 2d 1021,

1025 (S.D. Iowa 2002) (casino did not owe common-law duty to prevent problem gamer from gaming); *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W. Va. 2016) (video lottery terminal manufacturers and casinos where terminals are located had no duty to protect users from compulsively gaming); *NOLA 180 v. Harrah's Operating Co.*, 94 So. 3d 886 (La. Ct. App. 2012) (casino had no duty to identify and recognize problem gamblers).

Moreover, courts have refused to hold gaming operators liable for customers' "own decision[s]" to participate in gaming. *See Ristic v. Mach. Zone, Inc.*, No. 15-CV-8996, 2016 WL 4987943, at *4 (N.D. Ill. Sept. 19, 2016) (declining to impose liability to "protect [a customer] from his own decision to play the Casino"); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 469 (D. Md. 2015) ("The Court does not sit in judgment of the entertainment choices that Plaintiff and others like her have made—but it will not allow Plaintiff to foist the consequences of those choices onto an entertainment purveyor that, at least on the face of this Complaint, appears to have done nothing wrong.").

This Court should follow other jurisdictions and decline to expand New York tort law by imposing new legal duties on gaming operators. "[I]t is not the role of federal courts to expand state law in ways not foreshadowed by state precedent." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 301 (S.D.N.Y. 2002) (citation omitted). Principles of New York negligence law counsel against expanding liability in the manner that Plaintiffs urge. "It is 'the responsibility of courts in fixing the orbit of duty, to limit the legal consequences of wrongs to a controllable degree and to protect against crushing exposure to liability.'" *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997) (quoting *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (1985)). Due to "practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another," New York courts generally will not

"extend[] liability to defendants for their failure to control the conduct of others"—here, control Plaintiffs themselves and their choices to engage in gaming activity. *See Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232-33 (2001). To create and impose a legal duty on gaming operators that makes them legally responsible for their adult customers' uncoerced and voluntary decisions to bet on sports would create an unworkable standard that would result in a "flood of new litigation" against companies in the industry. *See Donohue v. Copiague Union Free Sch. Dist.*, 407 N.Y.S.2d 874 (App. Div. 1978).

Finally, it would be particularly inappropriate to add a legal duty in tort given the existence of the comprehensive administrative scheme that regulates gaming. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 9, §§5330.1–5330.45. Courts are "reluctant to imply a private right of action for money damages in favor of casino patrons" where, as here, the state has an "elaborate regulatory scheme" over the "casino and gaming industry." *Antar*, 2025 WL 1219316, at *4 (cleaned up). This Court should not recognize the new special duties that Plaintiffs seek to impose, and it should dismiss the negligence claim.

### D.   The Complaint Does Not Adequately Allege A Cognizable Injury Caused By Purported Negligence.

The Complaint fails to state a claim for negligence for the additional reason that Mirsberger and Mendez only allege economic and emotional injuries, not physical harm. FAC ¶392 (alleging "financial losses" and damages related to various emotional injuries). "Under New York law, a claim of negligence can only be made when the actions of the defendant have caused *physical harm* to the plaintiff or plaintiffs' property." *Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 257 (S.D.N.Y. 2009) (emphasis added); *Gartenberg v. Cooper Union for the Advancement of Science and Art*, 765 F. Supp. 3d 245, 282 (S.D.N.Y. 2025) (dismissing negligence claim where a plaintiff "allege[d] only emotional and economic harm").

### III.    The Fiduciary Duty Claim Fails (Seventh Cause of Action).

Mirsberger and Mendez fail to allege any fiduciary relationship between themselves and DraftKings, and this claim thus fails as a matter of law. A fiduciary duty claim can be brought only if "a fiduciary duty existed between plaintiff and defendant[.]" *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009). A fiduciary relationship exists only if a relationship has "the characteristics of de facto control and dominance." *42-50 21st St. Realty LLC v. First Cent. Sav. Bank*, No. 20-CV-05370 (RPK) (RLM), 2022 WL 1004187, at *6 (E.D.N.Y. Apr. 4, 2022). No fiduciary relationship arises in a "[n]ormal commercial relationship," *P. Chimento Co. v. Banco Popular de Puerto Rico*, 617 N.Y.S.2d 157, 159 (App. Div. 1994), or in "arm's length" interactions, *Ezeiruaku v. Am. Express Co.*, No. 20-CV-4004 (LJL), 2020 WL 6135794, at *4 (S.D.N.Y. Oct. 19, 2020).

Although Mirsberger and Mendez assert a "relationship of trust" with their VIP hosts (FAC ¶404), the alleged facts instead show only a set of arm's-length commercial communications, where the hosts sent promotions (*id.* ¶¶ 252, 256, 292) and offered site credits (*id.* ¶¶ 270, 292–93). No dominion or control is alleged. Critically, no host is alleged to have had the ability to place wagers on Plaintiffs' behalf. *Compare Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (broker is a fiduciary "only where the customer has delegated discretionary trading authority"). While Mirsberger and Mendez apparently *subjectively* believed that their hosts "act[ed] in Plaintiffs' best interest" (FAC ¶405), the "[m]ere reposal of one's trust [or] confidence" in another cannot create a fiduciary duty unless the other party "accepted" that trust, which no alleged facts show. *See Hector v. Hector*, No. 22CV5990(VB), 2023 WL 6038025, at *5 (S.D.N.Y. Sept. 15, 2023).

Second, Plaintiffs' claim must also be dismissed because Mirsberger and Mendez expressly agreed that the parties have no fiduciary relationship. Both Plaintiffs agreed to DraftKings' TOU,

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

which set conditions for use of DraftKings' platform. McAuley Decl. ¶¶4–5; FAC ¶294 (alleging that Mendez violated the TOU). The TOU states that "[n]othing in these [TOU] shall create or be deemed to create a . . . fiduciary relationship or joint venture between you and DraftKings." McAuley Decl. Ex. 1 at 7 & Ex. 2 at 8. "[N]o fiduciary duty can arise" if the parties agree to "contractual disclaimers of [any] fiduciary duty." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381–82 (S.D.N.Y. 2004).[10]

## IV.    The Products-Liability Claims Fail (Twelfth through Fifteenth Causes Of Action).

Plaintiffs admit that DraftKings' offerings "are not typical consumer products." FAC ¶95. They are not products at all. They are intangible services and outside the scope of products liability. Moreover, Plaintiffs do not sufficiently plead the elements of a design defect or failure to warn claim.

### A.    The Claims Challenge Intangible Services, Not Products.

Plaintiffs must allege injuries caused by a "product" to state a product-liability claim, which they have not done and cannot do. *See* Restatement (Third) of Torts: Prods. Liab. §19 cmt. a (1998) ("Restatement").[11] The Restatement defines a "[p]roduct" as "tangible personal property distributed commercially for use or consumption." *Id.* §19(a). "Services, even when provided commercially, are not products." *Id.* §19(b).

DraftKings provides users with a service: the ability to place a bet on DK Sportsbook, an online platform. FAC ¶66 ("DraftKings's mobile application" allows customers to "place bets through DraftKings's online sportsbook"). The platform is intangible. One cannot hold, store, eat, or sell it. Courts routinely hold that platforms like DraftKings' are intangible services, outside the

---

[10] The Court may consider the TOU for the reasons stated *supra* notes 6 & 9.

[11] New York courts apply the Third Restatement of Torts. *See In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 786 (2016).

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

scope of products-liability law. *See Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 397–400 (S.D.N.Y. 2018) ("Amazon is better characterized as a provider of services" so products liability will not apply); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 173 (D. Conn. 2002) (video game was not a "product"); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1000, 1011 (C.D. Cal. 2022) (Airbnb was "more akin to a service than to a product"); *Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDX), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) ("Snapchat is more like a service than a product"); *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (internet sites are not "products" for purposes of products liability).

Plaintiffs' products-liability claims separately fail to the extent they are based on intangible expressions and company policies or practices, which are also outside the remit of products-liability law. *See Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 325 (S.D.N.Y. 2006), *aff'd*, 279 F. App'x 40 (2d Cir. 2008) (intangible expressions contained in a book were not subject to products liability). One of Plaintiffs' theories appears to be that the "design" of DraftKings' promotions is addictive. *See, e.g.*, FAC ¶¶86, 115, 222, 486. Promotions are "ideas and expressions . . . not products." *See Gorran*, 464 F.Supp.2d at 324. Plaintiffs also attempt to allege that company "training," "policies," "practices," and "system[s]" are design defects. FAC ¶¶215, 247, 473(p). None of these aspects of DraftKings' business can be said to concern the design of a tangible product to which products-liability law applies.

New York courts have never extended products-liability law to a website or app providing services, like DK Sportsbook. This Court should not be the first.

**B.      Plaintiffs Have Again Failed To Allege Cognizable Injury.**

To sustain a products-liability claim, a plaintiff must allege "bodily injury, or damage to some property other than the product." *Advanced Refrigeration & Appliance Co. v. Ins. Co. of N. Am.*, 349 N.Y.S.2d 195, 197 (App. Div. 1973). "The general rule under New York law is that

economic loss is not recoverable under a theory of negligence or strict products liability." *Am. Tel. & Tel. Co. v. N.Y. City Hum. Res. Admin.*, 833 F. Supp. 962, 982 (S.D.N.Y. 1993). Plaintiffs have failed to allege either bodily injury or property damage, and they impermissibly seek only "economic injuries" and unspecified "pain and suffering." *See* FAC ¶478. Plaintiffs fail to allege the requisite injury and these claims must be dismissed.

   **C.    The Design-Defect Claims Fail For Additional Reasons (Twelfth and Fourteenth Causes of Action).**

   To state a design-defect claim, a plaintiff must plead: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Kane v. Covidien LP*, No. 2:23-CV-9207 (NJC) (ARL), 2025 WL 486658, at *6 (E.D.N.Y. Feb. 12, 2025). Plaintiffs' design defect claims fail as a matter of law.

   First, a defectively designed product is one which is "in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018). The allegations in the FAC confirm that DraftKings' site performs exactly as contemplated, by allowing users to wager on sports games. *See Antar*, 2025 WL 1219316, at *3 ("Each time Antar placed a bet . . . he received exactly what he thought he was purchasing—a gambling experience where winning was not guaranteed."). It is not unreasonably dangerous to facilitate wagering on sports, given that New York has licensed DraftKings to do exactly that.

   Second, Plaintiffs fail to identify a particular issue with the design of any tangible object. *Oden*, 330 F. Supp. 3d at 888–89. Plaintiffs assert vaguely that DraftKings designed its app and promotions "to addict users" (FAC ¶ 467) and "with features and algorithms . . . that are

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

particularly addictive" (FAC ¶ 501). Allegations of general addictiveness are insufficient to establish defective design. *See Oden*, 330 F. Supp. 3d at 888–89.

Third, Plaintiffs fail to plead a technologically feasible and commercially acceptable alternative design that would have prevented the alleged injury while serving the same function as the product. *See Erazo v. SCM Grp. N. Am.*, No. 16-CV-2386(RRM)(RER), 2019 WL 1044365, at *20 (E.D.N.Y. Mar. 5, 2019); *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 560 (S.D.N.Y. 2022); *see also Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 365 (S.D.N.Y. 2009) ("[T]o plead adequately that a product whose only function is to please a customer has a design defect, a plaintiff must allege both that the product could be designed in a safer manner, and that the safer alternate design is as acceptable to consumers.") (cleaned up). Plaintiffs offer only a perfunctory list titled "feasible alternative designs." FAC ¶473. They have not alleged whether and how each of these designs would have prevented their alleged injuries, whether the designs are economically and technologically feasible, or whether they would have served the same function as the existing platform.

Finally, Plaintiffs do not allege that a cognizable defect caused their alleged injuries. They allege conclusorily that "as a direct and proximate result of DraftKings products' defective design, Plaintiffs and Class Members suffered serious injuries" and that "DraftKings' negligent design of its products was a direct and proximate cause and a substantial factor in the injuries sustained." FAC ¶¶478, 505. Generic allegations do not show a "design defect in the product was a substantial factor in causing [Plaintiffs'] injury," as required under New York law. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 110 (1983). To the extent Plaintiffs are any more specific, they say they were harmed by things *other than* a product defect. *See, e.g.*, FAC ¶¶239 (harmed by "the addition of a VIP Host"), 247 ("harmed by DraftKings' VIP tier system").

### D.    The Failure-To-Warn Claims Fail For Additional Reasons (Thirteenth and Fifteenth Causes of Action).

To state a claim for failure to warn, a plaintiff must show "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *Oden*, 330 F. Supp. 3d at 891. "A plaintiff is required to [plead facts illustrating] that the product did not contain adequate warnings." *Id.* (alteration in original). "[M]erely asserti[ng] that warnings were not 'adequate' or 'sufficient' are nothing more than legal conclusions." *Id.*

Plaintiffs' allegations are insufficient because they fail to reference the extensive warnings provided by DraftKings, and so necessarily fail to explain how the provided warnings are "inadequate." *See id.* Moreover, none of Plaintiffs' allegations supports a duty to warn. In New York, "there is no duty to warn a consumer already aware through common knowledge or learning of a specific hazard." *Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 497 (S.D.N.Y. 2009). Plaintiffs do not allege that they were unaware that gambling imposes a risk of monetary loss or addiction.

## V.    Plaintiffs Lack Standing To Seek Injunctive Relief.

Plaintiffs purport to seek unspecified injunctive relief without a showing of imminent future harm. FAC ¶¶34, 351, 374, 402, 481, 491, 507, 521. "In seeking prospective relief like an injunction, a plaintiff must show that he can reasonably expect to encounter the same injury again in the future." *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015) (cleaned up). Plaintiffs that have become aware of alleged misrepresentations are not in "danger that they will again be deceived by them." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (cleaned up). Were Plaintiffs to enter either promotion now, they would do so "with exactly the level of information" that they now possess and could not claim to be deceived

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

or harmed. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147–48 (2d Cir. 2020). They lack standing to seek injunctive relief.

## **CONCLUSION**

Plaintiffs have now had two opportunities to plead their claims and have fallen short both times. Their FAC should be dismissed with prejudice.

DATED:  June 20, 2025                                  Respectfully Submitted,


By:    *    /s/ Richard R. Patch*
_____
Richard R. Patch *(pro hac vice)*
Clifford E. Yin *(pro hac vice)*
Christopher J. Wiener *(pro hac vice)*
Sarah E. Peterson *(pro hac vice)*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-rrp@cpdb.com
       ef-cey@cpdb.com
       ef-cjw@cpdb.com
       ef-sep@cpdb.com

Alan E. Schoenfeld
Andrew S. Dulberg *(pro hac vice)*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-937-7294
Email:  alan.schoenfeld@wilmerhale.com
        andrew.dulberg@wilmerhale.com

Attorneys for Defendants
DraftKings Inc. and Crown NY Gaming Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by the United States District Court for the Southern District of New York

Local Rule 7.1(c) , I certify that the document contains 8,725 words, excluding the parts of the

document that are exempted by the United States District Court for the Southern District of New

York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 20, 2025                    By:        */s/ Richard R. Patch*
                                                   Richard R. Patch

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**